UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS C. WILLIAMS, Director of
Constituents,

                              Plaintiff,

v.                                                                    3:24-CV-0268
                                                                      (MAD/ML)

BINGHAMTON CITY POLICE,

                              Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

THOMAS C. WILLIAMS
  Plaintiff, *Pro Se*
163 Susquehanna Street, Rear Unit
Binghamton, New York 13901

MIROSLAV LOVRIC, United States Magistrate Judge

### <u>ORDER and REPORT-RECOMMENDATION</u>

The Clerk has sent a complaint in the above captioned action together with an amended

application to proceed *in forma pauperis* and motion to appoint counsel, filed by Thomas C.

Williams ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 3, 10.)  For the reasons discussed

below, I (1) grant Plaintiff's amended *in forma pauperis* application (Dkt. No. 10), (2) deny

Plaintiff's motion for appointment of counsel (Dkt. No. 3), and (3) recommend that Plaintiff's

Complaint (Dkt. No. 1) be dismissed with leave to amend.

## I.    INTRODUCTION

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that his rights were

violated by Defendant Binghamton City Police ("Defendant").  (*See generally* Dkt. No. 1.)

The Complaint is largely non-sensical and Plaintiff's handwriting makes it even more

difficult to decipher.  (*Id*.)  As best as the undersigned can deduce, the Complaint appears to

allege that Defendant did not accept Plaintiff's "registration," which Plaintiff understands to be a

violation of his civil rights.  (*Id*.)  The Complaint is on form complaints alleging violations of 42

U.S.C. § 1983, the Americans with Disabilities Act, and Title VII of the Civil Rights Act, as

Amended.  (*See generally* Dkt. No. 1.)

As relief, Plaintiff seeks to "recover registration of Binghamton 'Police' right-of-way"

(Dkt. No. 1 at 9), and "that the police chief allows the sheriff's department to have a expectance

to sponsor me for permit to carry for right-of-way within NY state of registration privalage and

of requested" (*id*. at 13 [errors in original]).

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant

amended *in forma pauperis* application (Dkt. No. 10) the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted.[3]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

_____

who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id*.

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint

sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties .

. . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his

pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be

dismissed for two reasons.

First, as it currently stands, Plaintiff's Complaint wholly fails to provide fair notice of the

claims he attempts to assert.  The "facts" portion of the form complaint pursuant to 42 U.S.C. §

1983 is blank and the causes of action state:

> FIRST CAUSE OF ACTION
> no search warrant
> SECOND CAUSE OF ACTION
> no arrest warrant
> THIRD CAUSE OF ACITON
> out of geographical zone

(Dkt. No. 1 at 2-3.)

The facts portion of the form complaint pursuant to Title VII states:

> 1.  My registration is noticed by the United States Government as a asset
> 2.  My impingement is a registration with
> 3.  Full annuity

    4.  My offer to the police of Binghamton is protected my rights by law of the "Police Act"

(Dkt. No. 1 at 7 [errors in original].)  The causes of action portion of the Title VII form complaint state:

> FIRST CAUSE OF ACTION
> 1. service to safe save service to save and protect
> 2. offer registration a safe resolution for the comunity by the people for the people and them that service this nation
> 3. resolve remain retate secure and proceed to continue
>
> SECOND CAUSE OF ACTION
> 1. relocate police headcorters within 13901 zip code for resolution of respect for regional Department of justice.
> while reserving registration of police family and show respect to resolution and registration
>
> THIRD CAUSE OF ACTION
> 1. supply gym
> 2. shower and changing room
> 3. supply safe room offices with sleeping corders a future floor plan for my headcorders as well for my registration

(Dkt. No. 1 at 8 [errors in original].)

Given its lack of clarity, the undersigned recommends dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. Civ. P. and because Plaintiff's claim or claims against Defendant are entirely unclear.

Second, in the alternative, I recommend that the Complaint be dismissed for failure to state a claim upon which relief may be granted.

To the extent that the Complaint is construed as asserting claims pursuant to 42 U.S.C. § 1983 against Defendant, it fails to allege facts plausibly suggesting that Defendant violated any of Plaintiff's federal rights.  *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (holding that section 1983 "is not itself a source of substantive rights," but is a vehicle for vindicating federal rights embedded in the United States Constitution and federal statutes); *see also Patterson v.*

*County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (holding that section 1983 "merely provides

a method for vindicating federal rights elsewhere conferred, such as those conferred by §

1981.").

      To the extent that the Complaint is construed as asserting claims pursuant to the ADA

against Defendant, it fails to allege facts plausibly suggesting that Plaintiff is an individual with a

disability.  42 U.S.C. § 12102(1) (defining "disability" to mean "a physical or mental impairment

that substantially limits one or more major life activities of [an] individual . . . record of such

impairment; or . . . being regarded as having such an impairment.").[4]

---

[4]      Moreover, Plaintiff could not proceed with a claim under Title I of the ADA, which
addresses employment discrimination, because he has not alleged that he was employed by
Defendant.  42 U.S.C. § 12117; *see Mary Jo C. v. New York State and Local Retirement Sys.*,
707 F.3d 144, 169 (2d Cir. 2013) ("Title I of the ADA expressly deals with th[e] subject of
employment discrimination . . . .") (citation and internal quotation marks omitted).  "Title II of
the ADA proscribes discrimination against the disabled in access to public services." *Harris v.
Mills*, 572 F.3d 66, 73 (2d Cir. 2009).  Plaintiff has failed to sufficiently plead that Defendant
"denied [him] the opportunity to participate in or benefit from public services, programs, or
activities, or has otherwise discriminated against him, by reason of his disability rather than a
legitimate nondiscriminatory reason." *Tsuma v. Costello*, 22-CV-0067, 2022 WL 1036819, at *8
(D. Conn. Apr. 6, 2022).  More specifically, Plaintiff has not alleged facts plausibly suggesting
that Defendant discriminated against him on the basis of his disability.  *See Franks v. Eckert*, 18-
CV-0589, 2020 WL 4194137, at *4 (W.D.N.Y. July 21, 2020) ("Although [the p]laintiff has
alleged he was denied some of his requested reasonable accommodations, there are no facts in
the Amended Complaint to suggest that [the d]efendants refused to allow [the p]laintiff to
participate in any program or activity because of his disability"); *see also Rosado v. Herard*, 12-
CV-8943, 2014 WL 1303513, at *6 (S.D.N.Y. Mar. 25, 2014) (dismissing ADA claims where
the plaintiff failed to "plead[ ] facts demonstrating that he was denied access to therapeutic group
sessions because of a disability").  Further, Title III of the ADA is "not applicable to public
entities" and thus, is inapplicable here where Defendant is a public entity.  *Morales v. New York*,
22 F. Supp. 3d 256, 266-67 (S.D.N.Y. 2014) (citing cases).  In addition, Title IV of the ADA
does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability
discrimination in telecommunications.  *See Genco v. Sargent & Collins LLP*, No. 18-CV-0107,
2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).  Lastly, Title V of the ADA, sometimes
referred to as the "retaliation provision," also does not appear applicable because Plaintiff does
not allege that he engaged in activity protected by the ADA, that Defendant was aware of that
activity, or any causal connection between the allegedly adverse actions that Defendant took
against him and the protected activity.  *See Chiesa v. New York State Dep't of Labor*, 638 F.
Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.).

To the extent that the Complaint is construed as asserting a claim pursuant to Title VII of the Civil Rights Act, as amended, it fails to allege facts plausibly suggesting an employee/employer relationship between Plaintiff and Defendant. *See Jones v. Thomas*, 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Moreover, the Complaint fails to allege facts plausibly suggesting that Plaintiff filed a timely charge with the EEOC and received an EEOC right-to-sue letter before commencing this action. 42 U.S.C. § 2000e-5(e), (f); *see Legnani v. Alitalia v. Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under . . . Title VII . . . , a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter.").

As a result, to the extent that the Complaint is construed as asserting claims pursuant to 42 U.S.C. § 1983, the ADA, and/or Title VII, I recommend that those claims be dismissed.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Given that this is the Court's first review of Plaintiff's pleading and that Plaintiff is a *pro*

*se* litigant, out of an abundance of caution, I recommend that he be permitted to replead the

Complaint.

If Plaintiff chooses to file an amended complaint, he should note that the law in this

circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of

a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp.

35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.

1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y.

May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth

facts that give rise to the claims, including the dates, times, and places of the alleged underlying

acts, and each individual who committed each alleged wrongful act. In addition, the revised

pleading should allege facts demonstrating the specific involvement of any of the named

---

[5]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI.    MOTION TO APPOINT COUNSEL

Plaintiff also submitted a request for appointment of counsel.  (Dkt. No. 3.)  As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case."  *Lefridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citation omitted).  Furthermore, there is no bright-line test determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-393 (2d Cir. 1997).  Rather, the court must carefully consider a number of factors, including whether the indigent's claims seem likely to be of substance.  *See Leftridge*, 640 F.3d at 69 (stating that "[t]he court properly denies the plaintiff's motion for counsel if it concludes that his chances of success are highly dubious.") (citations omitted).

Because I have recommended dismissal of the instant matter, it cannot be said that Plaintiff's claims are likely to be of substance; therefore, the motion (Dkt. No. 3) must be denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO REPLEAD** as frivolous (or, in the alternative, for failure to state a claim upon which relief may be granted) pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: July  3 , 2024
       Binghamton, New York

*Miroslav Lovric*

Miroslav Lovric
U.S. Magistrate Judge

---

[6]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 12 of 85

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

**B. Defendants' Motion for Summary Judgment**
**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, the Town make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

**C. Plaintiff's Opposition Memorandum of Law**
Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 13 of 85

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law
In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord*, *Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 14 of 85

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*& Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

## 2. Undisputed Material Facts

**\*4**  For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 15 of 85

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 16 of 85

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 17 of 85

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 18 of 85

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 19 of 85

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1   Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2   The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3   As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4   The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5   For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

**I. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

## B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the

Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the

defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

### All Citations

Not Reported in Fed. Supp., 2022 WL 17517312

## Footnotes

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 24 of 85

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Jones v. Thomas, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 25 of 85

2020 WL 5077026
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Brandon C. JONES, Plaintiff,

v.

Ms. Jisin H. THOMAS; Mr. Jonathan Tauarez;
Volunteers of America Corporation; Volunteers of
America, Swartz Shelter; Volunteers of America
135 W. 50th Street, NYC, NY 10024, Defendants.

20-CV-5581 (LLS)
|
Signed 08/27/2020

**Attorneys and Law Firms**

Brandon C. Jones, New York, NY, pro se.

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff, appearing *pro se*, invokes the Court's federal question jurisdiction, alleging that Defendants violated his federal constitutional and statutory rights. Plaintiff filed the initial complaint on July 17, 2020, and on July 30, 2020, he filed an amended complaint. (ECF Nos. 2 and 6.) Plaintiff also filed a motion for permission for electronic case filing. (ECF No. 5.) By order dated August 5, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). For the reasons set forth below, the Court grants Plaintiff leave to file a second amended complaint within sixty days of the date of this order.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

Plaintiff brings his claims using the Court's general complaint form. He checks the box on the form to invoke the Court's federal question jurisdiction, and in the section of the form asking which of his federal constitutional or federal statutory rights have been violated, Plaintiff writes, "4th and 14th Constitutional Amendment[,] ADA Act of 1990 42 USC Reasonable accommodation[,] Title VII Civil Rights Act 1964[,] Intimidation by defendants, 42 USC 3617[.]" (ECF No. 6, at 2.) He sues the Volunteers of America ("VOA") Corporation, VOA Schwartz Shelter, [1] a VOA facility located at 135 W. 50th Street in New York City, and VOA employees Jisin H. Thomas and Jonathan Tauarez.

**\*2** The following allegations are taken from the amended complaint, much of which is confusing and lacking context. Defendant Jisin H. Thomas "failed to provide Reasonable Accommodation, with regards to the advise [sic] of Medical

Personnel and took upon herself to disregard all Medical Documentation." (*Id.* at 5.) Thomas "engaged tactics in Retaliation and forms of Intimidation by engaging unlawful behavior" and "filing a formal complaint with Individual Mr. Darrel Spencer," after Thomas found out that Plaintiff sent "sincere complaints to VOA Corporate Offices and other NYS/NYC Departments regarding Safety and Hygiene issues of Swartz [sic] Shelter." (*Id.* at 5.) Spencer then contacted Plaintiff and demanded that he report to Spencer's "Supervisor @ 500 Pearl Street SDNY." (*Id.*)

Plaintiff further alleges that Defendant Jonathan Tauarez "engaged in tactics and has disregarded all required assistance with Reasonable Accommodation as provided by the ADA of 1990." (*Id.*) Tauarez wrote "a formal Infraction" against Plaintiff "and sent [it] to Individual Mr. Darrel Spencer" before "demand[ing]" that Plaintiff sign the document. (*Id.*) Plaintiff did not comply and Spencer "contacted [Plaintiff] about the Infraction and made statements about going before the Judge and questioned [Plaintiff] about the aforementioned and the issues continue today without any relief or stoppage, in violation of various NYS Law and Federal Code 42 USC 1637." (*Id.*)

Plaintiff asserts that as a result of Defendants' unlawful acts, he has experienced at the Schwartz Shelter "[i]nfections, pain, and suffering from the failure to provide clean facilities." (*Id.* at 6.) He further states that he faced retaliation, "which could have landed [him] back in prison," because of "Blowing the Whistle on unsafe conditions" at Schwartz. (*Id.*) Plaintiff also asserts that he has experienced "[e]motional [i]ntimidation" and "prevention of proper medical treatment by refusing medical supplies deliveries, on multiple occasions." (*Id.*)

He seeks money damages and injunctive relief.

Plaintiff attaches to the complaint pages of medical records, and a July 29, 2020 "Notice of Transfer" from VOA, informing Plaintiff that "DHS is issuing [him] an administrative transfer within 48 hours" and that he will be notified of his "new assigned Mental Health shelter once it becomes available." (*Id.* at 17.)

## DISCUSSION

### A. Constitutional claims under 42 U.S.C. § 1983
The Court construes Plaintiff's allegations that Defendants retaliated against him for filing complaints as asserting claims

under 42 U.S.C. § 1983 that Defendants violated his First Amendment rights. To state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). As Defendant VOA is a private non-profit organization, and Defendants Thomas and Tauarez are private parties who do not work for any state or other government body, Plaintiff has not stated a claim against these defendants under § 1983.

### B. Claims under the ADA
Title III of the ADA governs places of public accommodations, and guarantees that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III, a plaintiff must allege, "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation;[2] and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009). A plaintiff must also allege that the "exclusion or discrimination was due to [the plaintiff's] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).

**\*3** With respect to the third element, "a plaintiff can base a disability discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.' " *Brief v. Albert Einstein Coll. of Med.*, 423 Fed. Appx. 88, 90 (2d Cir. 2011) (quoting *Fulton*, 591 F.3d at

43). To bring a reasonable accommodation claim, a plaintiff must show "(1) [ ]he suffers from a disability (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the defendant refused the accommodation." *Lopez v. New York City Dep't of Homeless Servs.*, No. 17-CV-3014, 2019 WL 3531955, at *4 (S.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, No. 17-CV-3014, 2019 WL 4593611 (S.D.N.Y. Sept. 23, 2019).

Here, Plaintiff asserts that Defendants "failed to provide [a] Reasonable Accommodation" as required by the ADA, but he fails to allege any facts suggesting that he has a disability within the meaning of the ADA. Moreover, Plaintiff alleges no facts regarding the nature of the reasonable accommodation that he sought or that Defendants discriminated against him in denying such an accommodation. *See Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 451 (S.D.N.Y. 2019) (quoting *Shaywitz v. Am. Bd. Of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012)) ("Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the [plaintiff] was seeking, and (2) whether those accommodations were reasonable in light of the disability and the test."). The Court therefore grants Plaintiff leave to amend his complaint to allege facts supporting his claim that Defendants violated Title III of the ADA.

## C. Claims under the Fair Housing Act

Plaintiff also asserts that Defendants intimidated him in violation of 42 U.S.C. § 3617. That statute, a section of the Fair Housing Act, states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." Plaintiff must therefore allege facts suggesting that (1) he exercised or enjoyed a right under the FHA, and (2) Defendants intimidated or threatened him because he exercised or enjoyed a right under the FHA.

Section 3604 of the FHA, as applicable here, makes it unlawful to "discriminate in the [ ] rental [of], or to otherwise make unavailable or deny, a dwelling to any ... renter because of" the individual's disability. 42 U.S.C. § 3604(f)(1). It also prohibits discrimination against "any person in the terms,

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a [disability]." 42 U.S.C. § 3604(f)(2). Under certain circumstances, a refusal to make a reasonable accommodation can constitute unlawful discrimination under the FHA. *See* 42 U.S.C. § 3604(f)(3)(B).

Here, Plaintiff fails to allege facts suggesting that he has a disability under the FHA. *See Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting 42 U.S.C. § 3602(h)) ("To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more ... major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.' "). Even assuming that Plaintiff has a disability within the meaning of the FHA, he does not allege that he exercised his rights under the FHA and Defendants coerced, intimidated, or threatened him, or interfered with his exercise of those rights. *See* 42 U.S.C. § 3617. He rather makes the conclusory assertions that Thomas "engaged [in] tactic[s]" of retaliation and intimidation "by engaging [in] unlawful behavior." The only specific fact that Plaintiff alleges – that Thomas "fil[ed] a formal complaint" with Darrel Spencer after learning that Plaintiff filed complaints regarding safety and hygiene issues at Schwartz Shelter – does not suggest that Plaintiff was engaged in exercising his rights under the FHA or that Thomas's actions in filing an unspecified complaint against Plaintiff constituted intimidation or retaliation. If Plaintiff chooses to file a second amended complaint, he should allege facts suggesting that he exercised or enjoyed a right under the FHA, and that Defendants violated or interfered with that right or otherwise intimidated, coerced, or threatened Plaintiff in connection with his exercise or enjoyment of that right.

## D. Claims under Title VII

**\*4** Plaintiff also brings claims under Title VII of the Civil Rights Act of 1964. Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff does not allege that he is or was an employee of any of the defendants. The Court therefore dismisses his claims under Title VII for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claims under the ADA and FHA, the Court grants Plaintiff sixty days' leave to file a second amended complaint to detail his claims.

In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's second amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. **Because Plaintiff's second amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wishes to maintain must be included in the second amended complaint.**

If Plaintiff chooses to file a second amended complaint, the Court strongly encourages him to seek assistance from someone who can help him organize his thoughts and claims. If Plaintiff needs legal advice related to this matter, he may contact the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this Court. A copy of the flyer with details of the clinic is attached to this order.

## CONCLUSION

**\*5** The Clerk of Court is directed to transmit a copy of this order to Plaintiff. [3]

The Court grants Plaintiff's motion for permission for electronic case filing. (ECF No. 5.)

The Court dismisses Plaintiffs § 1983 claims against Thomas, Tauarez, VOA Corporation, VOA Schwartz Shelter, and VOA at 135 W. 50th Street.

The Court grants Plaintiff leave to file a second amended complaint that complies with the standards set forth above within sixty days of the date of this order. Plaintiff must caption the document as a "Second Amended Complaint," and label the document with docket number 20-CV-5581 (LLS). A Second Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted.

SO ORDERED.

Attachment

**Jones v. Thomas, Not Reported in Fed. Supp. (2020)**

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 29 of 85

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____    ____ Civ. _____ (____)

*(In the space above enter the full name(s) of the plaintiff(s).)*

**SECOND
AMENDED
COMPLAINT__**

-against-

Jury Trial:  ☐ Yes   ☐ No
(check one)

_____
_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**I.   Parties in this complaint:**

A.   List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff   Name _____
            Street Address _____
            County, City _____
            State & Zip Code _____
            Telephone Number _____

B.   List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

*Rev. 12/2009*                    1

Defendant No. 1   Name _____
                  Street Address _____
                  County, City _____
                  State & Zip Code _____
                  Telephone Number _____

Defendant No. 2   Name _____
                  Street Address _____
                  County, City _____
                  State & Zip Code _____
                  Telephone Number _____

Defendant No. 3   Name _____
                  Street Address _____
                  County, City _____
                  State & Zip Code _____
                  Telephone Number _____

Defendant No. 4   Name _____
                  Street Address _____
                  County, City _____
                  State & Zip Code _____
                  Telephone Number _____

**II.   Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.   What is the basis for federal court jurisdiction? *(check all that apply)*
     ☐ Federal Questions          ☐ Diversity of Citizenship

B.   If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____
     _____
     _____

C.   If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?
     Plaintiff(s) state(s) of citizenship _____
     Defendant(s) state(s) of citizenship _____
     _____

*Rev. 12/2009*                    2

**III.   Statement of Claim:**

State as briefly as possible, the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.   Where did the events giving rise to your claim(s) occur? _____

B.   What date and approximate time did the events giving rise to your claim(s) occur? _____
     _____
     _____

C.   Facts: _____
     _____

*What happened to you?*
     _____
     _____

*Who did what?*
     _____
     _____
     _____

*Was anyone else involved?*
     _____

*Who else saw what happened?*
     _____
     _____

**IV.   Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.
     _____
     _____
     _____
     _____

*Rev. 12/2009*                    3

**V.   Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _____
     _____
     _____
     _____
     _____
     _____
     _____
     _____
     _____
     _____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ____ day of _____, 20__.

            Signature of Plaintiff _____
            Mailing Address _____
                           _____
                           _____
            Telephone Number _____
            Fax Number *(if you have one)* _____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

            Signature of Plaintiff _____
            Inmate Number _____

*Rev. 12/2009*                    4



### Notice For Pro Se Litigants

As a public health precaution, the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants has temporarily suspended all in-person client meetings as of Tuesday, March 17, 2020.

Limited scope legal assistance will continue to be provided, but only by appointment and only over the phone. During this time, we cannot assist walk-in visitors to the clinic.

If you need the assistance of the clinic, please call 212-659-6190 and leave a message, including your telephone number, and someone will get back to you as soon as possible. If you do not leave a message with your telephone number, we cannot call you back.

Please be patient because our responses to your messages may be delayed while we transition to phone appointments.



**All Citations**

Not Reported in Fed. Supp., 2020 WL 5077026

---

### Footnotes

1    The Schwartz Assessment Shelter is a shelter for homeless men that is operated by VOA and located on Wards Island in New York City. *See* https://www.voa-gny.org/emergency-shelter.

2    The definition of "public accommodation" includes a "homeless shelter ... or other social service center establishment." 42 U.S.C. § 12181(7)(K).

3    Plaintiff has consented to receiving electronic service of Court document. (ECF No. 7.)

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 31 of 85

Basora-Jacobs v. Palevsky, Not Reported in Fed. Supp. (2020)

2020 WL 3868710
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court, E.D. New York.

Eleanor BASORA-JACOBS, Plaintiff,

v.

CEO Arthur PALEVSKY; D.O. Ava Morgan;
Pat Perkins; Linda Schnabel, AC; Mgr. Greg
Defranceso; Michael Garcia, Defendants.

20-CV-1675 (LDH)(LB)
|
Signed 07/09/2020

**Attorneys and Law Firms**

Eleanor Basora-Jacobs, Staten Island, NY, pro se.

### MEMORANDUM AND ORDER

LaSHANN DeARCY HALL, United States District Judge:

**\*1** Plaintiff Eleanor Basora-Jacobs, proceeding pro se, brings an employment discrimination and retaliation action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* [1] (Compl., ECF No. 1.) Plaintiff's April 1, 2020 motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) is granted. (Pl.'s Leave Mot., ECF No. 2.)

### BACKGROUND [2]

Plaintiff is female and Hispanic. (Compl. at 5.) She is a former employee of Independent Living Association in Brooklyn. (*Id.* at 3.) Plaintiff "charge[s] Defendants with unlawful discriminatory practice relating to their employment based on race, national origin and retaliation" between July 2016 and March 2018. (*Id.* at 4-5.) She alleges that "staff spoke other language against company policy in front of clients and their parents" and that her employment was terminated. (*Id.* at 4.) Plaintiff alleges no other specific facts in support of her discrimination and retaliation claims. She names the Arthur Palevsky, CEO and Ava Morgan, the Director of Operations and four other employees of Independent Living Association as Defendants. [3] (*Id.* at 1-3.)

### STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the [C]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the [C]ourt must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

**\*2** Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Under 28 U.S.C. § 1915A(a), a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Basora-Jacobs v. Palevsky, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 32 of 85

## DISCUSSION

### I. Individual Liability

Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000). Accordingly, Plaintiff's Title VII causes of action are dismissed *sua sponte* as to the individual Defendants for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (permitting the district to dismiss an *in forma pauperis* action where it "fails to state a claim on which relief may be granted"); *see also Saunders v. N.Y. City Dep't of Educ.*, 07–CV–2725, 2010 WL 331679 at *8 (E.D.N.Y. Jan. 19, 2010) (dismissing plaintiff's Title VII claims *sua sponte* against individual defendants because "individuals are not subject to liability under those statutes and any 'official capacity' claim would be redundant to plaintiff's claims against [the public entity]").

### II. Sufficiency of Title VII Claim

The complaint does not list Plaintiff's employer as a defendant in the case caption. However, even if it did, the complaint does not state sufficient facts to support a Title VII claim against Plaintiff's employer. "A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). A plaintiff can make such a showing "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87; *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 310 (2d Cir. 2015) (explaining that an employment discrimination complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face).

In the employment discrimination complaint form, Plaintiff checked the "race" and "gender/sex" boxes, and provides that she is Hispanic and female. (Compl. at 5.) However, she did not allege any facts suggesting that her termination or retaliation was done "at least, in part, for a discriminatory reason." *Vega*, 801 F.3d at 87. Accordingly, her Title VII claim is dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is DISMISSED for failure to state a claim. The Court grants Plaintiff leave to file an amended complaint against her former employer, the Independent Living Association, Inc., within thirty (30) days. If Plaintiff decides to file an amended complaint, it should name the former employer as the defendant, be titled "AMENDED COMPLAINT" and bear the same docket number as this order, 1:20-CV-1675 (LDH)(LB). Any amended complaint must include facts in support of such a claim. Any amended complaint will replace the original complaint and must stand on its own without reference to the original complaint. Failure to file an amended complaint within 30 days will result in dismissal of this case.

**\*3** No summons shall be issued at this time and all further proceedings shall be stayed for 30 days or until further order of the Court. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to mail a copy of this memorandum and order to the pro se litigant, and include a form complaint for employment discrimination.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3868710

## Footnotes

1       The complaint is dated March 21, 2020, was mailed on March 25, 2020, and was received on April 1, 2020.

2      The following facts are taken from the complaint and are assumed true for the purposes of this memorandum and order.

3      Plaintiff named the four employee Defendants in the case caption, but only referred to Palevsky and Morgan in the body of her complaint. (*Id.* 1-2.)

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 34 of 85

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambler v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 39 of 85

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                                            © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 40 of 85

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

## INTRODUCTION

*1 In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 41 of 85

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.


BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 44 of 85

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b) (6).* [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

 **\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved

in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F.2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

## CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 47 of 85

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 48 of 85

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1036819
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Emile I. TSUMA, Sr., Plaintiff,

v.

Matt COSTELLO, et al., Defendants.

3:22-cv-00067 (SVN)
|
Signed 04/06/2022

**Attorneys and Law Firms**

Emile I. Tsuma, Sr., Uncasville, CT, Pro Se.

**INITIAL REVIEW ORDER**

SARALA V. NAGALA, UNITED STATES DISTRICT
JUDGE

**\*1** On January 13, 2022, Emile Tsuma, Sr. ("Plaintiff"),
an unsentenced inmate housed at Corrigan-Radgowski
Correctional Center ("Corrigan") of the Connecticut
Department of Correction ("DOC"),[1] brought this action
against his appointed counsel, Matt Costello, and District
Attorney David Smith, Prosecutor Ralph Bustamante,
and Prosecutor Sarah Steere (collectively the "Prosecutor
Defendants" and with Costello the "Defendants"). ECF No. 1.
Plaintiff asserts violations of his rights under the United States
Constitution, the Americans with Disabilities Act ("ADA"),
and the Rehabilitation Act ("RA"). *Id.* at 4-33. Plaintiff
has sued Defendants in their individual and official capacities and
requests damages and injunctive relief. *Id.* at 32-33. For the
reasons that follow, the Court hereby dismisses all claims
brought through this action.

**I. FACTUAL ALLEGATIONS**

Plaintiff's complaint includes factual allegations concerning
his criminal prosecutions, his DOC disciplinary hearing,
his DOC disciplinary sanctions, his prior interactions with
Attorney Bustamante in 2015, his parental rights and efforts
to regain his children, and his mental health treatment at
Whitting Hospital. The Court has reviewed all of the facts and
includes only those facts relevant to Plaintiff's claims asserted
against the Defendants.

For purposes of this initial review, the Court considers all
of Plaintiff's allegations to be true.[2] On January 7, 2019,
Plaintiff was housed at Corrigan when he became involved
in an altercation with correctional staff. ECF No. 1 ¶¶ 1-4.
He was later taken to segregation and charged with assault
on a public safety officer. *Id.* at ¶ 5. He was given a court
date of January 21, 2019, for his arraignment. *Id.* at ¶ 8. At
his arraignment on the charge of assault on a public safety
officer, the judge and prosecutor agreed to proceed with the
prosecution despite a lack of evidence to support probable
cause and the existence of exculpatory video footage. *Id.* at
¶ 16.

Plaintiff was appointed Matt Costello as defense counsel. *Id.*
at ¶ 18. Although Plaintiff had lost his telephone privileges
as a result of the disciplinary sanctions, he was able to
write letters and request legal calls between January 1, 2019,
through September 2019. *Id.* at ¶ 19. Plaintiff sent letters
to both the prosecutor and Costello to explain that he had
exculpatory video evidence relevant to his criminal charges.
*Id.*; *see also id.* at ¶ 14. Costello allegedly indicated that his
investigators would speak to Plaintiff's counselor about the
exculpatory video evidence. *Id.* ¶ 19.

**\*2** Costello dragged the case on by filing for continuances
that were granted; he visited Plaintiff occasionally and told
Plaintiff that the case against him was weak, although District
Attorney Smith wanted to have Plaintiff serve three and a
half years for the assault. *Id.* at ¶ 20. Plaintiff explained
that District Attorney Smith was upset that Plaintiff had
previously had a case dismissed due to exculpatory evidence.
*Id.* at ¶ 21.

Plaintiff requested Costello to file a motion for discovery and
to suppress evidence so that the case against Plaintiff could
be dismissed due to alleged exculpatory video evidence. *Id.*
Costello claimed that there was no such video evidence and
that the state had provided him with all of the evidence. *Id.* at
¶ 22. Plaintiff informed Costello that the prison had "maybe"
not provided all of the evidence since the video would show
they are covering up the false charges against Plaintiff. *Id.*
Costello responded that the prison would not do that. *Id.*

Between January 7 and September 19, 2019, Plaintiff called
the court to follow up on the exculpatory evidence that was
mailed to the New London Superior Court. *Id.* at ¶ 23. During
one of these calls, Plaintiff spoke with Attorney Bustamante
about whether he had evidence that showed Plaintiff's
innocence. *Id.* Attorney Bustamante attempted to clarify who

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 50 of 85

Tsuma v. Costello, Not Reported in Fed. Supp. (2022)

he was speaking to, but Plaintiff refused to provide that information. *Id.* Instead, Plaintiff told Attorney Bustamante that he needed to abide by the law. *Id.* Attorney Bustamante then stated that if he was speaking to an inmate, any crime Plaintiff believed occurred needed to be reported to the prison counselor. *Id.* Eventually, Plaintiff revealed his identity and that he had mailed Attorney Bustamante exculpatory evidence. *Id.* Upon hearing this, Attorney Bustamante became angered and denied receiving such evidence. *Id.*

At some time thereafter, though it is unclear exactly when, Plaintiff filed grievances against District Attorney Smith, Attorney Bustamante, and Attorney Costello. *Id.* ¶ 25. As a result of filing these grievances, the prosecutors wanted Plaintiff to serve three and a half years for a crime he had not committed. *Id.* at ¶¶ 25, 26. Plaintiff rejected the plea offer to serve three and half years, and instead had Costello file a Speedy Trial Act motion. *Id.* at ¶ 26. Despite filing the speedy trial motion, Costello failed to file for a probable cause hearing and a motion to suppress, and had failed to discover the video evidence. *Id.* at ¶ 26, 29.

After the Speedy Trial Act motion was granted, Costello, Plaintiff, and Attorney Steere appeared in court to pick jurors. *Id.* at ¶ 30. Both sides presented their evidence and case to the jurors. *Id.* Attorney Steere called four witnesses, including Kevin Gaudet, who testified that Plaintiff assaulted him. *Id.* at ¶ 31. Gaudet was allegedly "out to get Plaintiff" and was harassing him for filing grievances against him and other officers. *Id.*

During Costello's examination of Gaudet, Gaudet admitted that he was assaulted but did not have to see medical staff, did not report any injuries, and in fact, had no injuries. *Id.* at ¶ 32. However, Costello made no effort to object when Gaudet "attempted" to insult Plaintiff's "babymother[.]" *Id.* at ¶ 33. Costello also told Plaintiff that he should relax and keep his anger under control after Plaintiff questioned why he had not objected to the witnesses' statements. *Id.*

 **\*3**  Costello called Plaintiff's witnesses, who testified that Plaintiff had never hit anyone but instead was himself being attacked. *Id.* at ¶ 34. Counselor Jones responded to Costello's questions about his advisor report by stating, "I don't recall." *Id.* at ¶ 35.

Plaintiff provided testimony about his "account" of the incident during questioning by Attorney Steere. *Id.* at ¶ 36. After both parties rested, Plaintiff was placed in a holding cell.

*Id.* at ¶ 38. After thirty minutes of deliberations, Plaintiff was found not guilty. *Id.* It had taken the state and Costello nine and a half months to bring his case to trial. *Id.*

Costello informed Plaintiff that Attorney Steere wanted to release him. *Id.* at ¶ 39. Plaintiff informed Costello that he would be filing a lawsuit; Plaintiff asked him why Attorney Steere had not dismissed the charges based on the evidence that Plaintiff had mailed to the prosecutor's Office. *Id.* at ¶ 40. Plaintiff was incarcerated for nine months even though all parties knew about the exculpatory evidence and failed to acknowledge it because it would expose the cover up of Gaudet's criminal intent. *Id.* at ¶ 41.

When Plaintiff returned home, he discovered that his father had died in February while Plaintiff was in the Restrictive Housing Unit ("RHU"). *Id.* at ¶ 42. Plaintiff also tried to have his children returned to him but received no assistance in doing so. *Id.* at ¶ 44. Plaintiff later got into counseling and was prescribed medicine. *Id.* at ¶ 45.

In February 2020, Plaintiff was arrested for being intoxicated in a store and charged with interfering with an officer, criminal trespass, and failure to comply with finger printing. [3] *Id.* at ¶ 46. Plaintiff was also arrested on February 14, 2020, for criminal mischief because he broke a ceiling tile while attempting suicide in a Dunkin Donuts bathroom by swallowing Adderall pills. [4] *Id.* at ¶ 47. Plaintiff was struggling with depression, anxiety, insomnia, and was upset about his time spent incarcerated and his parental rights. *Id.* at ¶ 48.

After about nine months, Plaintiff was called into court and appointed an attorney, Sean Kelly, who filed for a mental health evaluation of Plaintiff. *Id.* at ¶¶ 52-53. Attorney Kelly was later replaced by Costello. *Id.* at ¶ 53. Plaintiff returned to prison on May 17, 2021, and contacted Costello to inform him that his parents had both passed away, that he could not see his children due to COVID-19, and that he had tried to commit suicide. *Id.* at ¶¶ 55-56.

Between May 17 and June 14, 2021, Plaintiff saw a group of doctors who agreed that Plaintiff should be placed in Whitting Hospital due to his paranoid ideations. *Id.* at ¶ 57. In a meeting with Attorney Bustamante, Costello and a superior court judge, Plaintiff agreed that he would go to Whitting for a sixty-day evaluation and treatment. *Id.* at ¶ 59.

**\*4** While he was at Whitting, Plaintiff attempted to contact Costello for advice about taking medications that were offered at Whitting, but Costello swore at him and had "attitude." *Id.* at ¶ 63. Later, when Plaintiff tried to contact him after being assaulted by a patient at Whitting, Costello would not answer his telephone calls. *Id.* at ¶ 64. Plaintiff's brother was later able to reach Costello. *Id.*

Plaintiff was informed that he would not receive further services after being found competent because he was not taking any medication. *Id.* at ¶ 65. Plaintiff did not understand that he would be excluded from the care he needed and be returned to prison if he did not take the medication at Whitting. *Id.* at ¶ 66.

On August 18, 2021, Plaintiff was found competent and transferred to prison. *Id.* at ¶ 67. A unit manager informed Plaintiff that his attorney could use his good report at Whitting as an argument for a bond reduction and that his time at Whitting could count as time served. *Id.* at ¶ 67. After Plaintiff informed Costello about this information, he hung up the telephone, claiming to be in court. *Id.* at ¶ 68.

During his court appearance on August 18, 2021, Plaintiff was informed that he could file for a bond reduction before his next appearance on October 22, 2021. *Id.* at ¶ 69. Plaintiff was unable to reach Costello about his bond reduction before his court appearance on October 22, 2021. *Id.* at ¶ 70.

On October 20, Plaintiff filed grievances against Costello and Attorney Bustamante. *Id.* at ¶ 75. The grievance against Attorney Bustamante was returned as Plaintiff had not at that time identified Attorney Bustamante. *Id.* Plaintiff's grievance against Costello complained of, among other things, neglect, communication issues, conflict of interest, and diligence issues. *Id.* Costello responded to the grievance by admitting that he had "issues" with Plaintiff, but that Plaintiff also had mental illness. *Id.* Plaintiff later filed a response explaining how dealing with Costello had traumatic effects and that he would hurt himself if he had to deal with Costello again. *Id.* at ¶ 76.

On October 22, at Plaintiff's court appearance, Costello informed Plaintiff that Attorney Bustamante wanted him to serve a sentence of eight years suspended after three years with five years of probation. *Id.* at ¶ 71. Costello explained that Attorney Bustamante was "upping" the charge to burglary. *Id.* at ¶ 73. However, Costello would not permit Plaintiff to see any "paper work" about the charges, and he

admitted that he had not filed for a bond hearing because "they aren't going to do it." *Id.* at ¶ 73. Plaintiff then fired Costello. *Id.* at ¶ 74.

Plaintiff remains in prison due to Attorney Bustamante and Costello's "negligent behavior or misconduct." *Id.* at ¶ 77. He has been denied the right to a bond reduction and has been incarcerated with no resolution from May 17, 2021, to January 4, 202[2], without due process as a result of Attorney Bustamante's and Costello's personal interests. *Id.* at ¶ 77.

Defendant Costello has not argued any facts about Plaintiff's "very bad history of mental health issues" and drug and alcohol problem. *Id.* at ¶ 77. Costello's only concern was what the prosecutor and judge had to say. *Id.* at ¶ 78.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' " *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## III. DISCUSSION

**\*5** Plaintiff asserts four legal claims in his complaint.[5] In his first claim, Plaintiff alleges that the Prosecutor Defendants "directly participated in a[n] unconstitutional act of malicious prosecution, by denying Plaintiff equal protection of the law by ignoring the fact Plaintiff provided exculpatory evidence[,] [by] withholding all evidence and offering plaintiff prison time with no supporting facts[;]" and that he had to spend 9.5 months in prison and endure a trial that resulted in a dismissal. ECF No. 1 at 29 (¶ 1).

In his second claim, Plaintiff asserts that Costello "directly participated in a[n] unconstitutional act of negligence by failing to present evidence or obtain exculpatory evidence which forced Plaintiff to remain incarcerated for 9 1/2 months," and by "refusing to file proper motions in Plaintiff's interest." *Id.* at 30 (¶ 2). He claims that Costello thereby denied him his rights to equal protection of the law under the Fourteenth Amendment.

In his third claim, he alleges that Attorney Bustamante "directly participated in a[n] unconstitutional act of malicious prosecution, deliberate indifference, and abuse of process by threatening to give Plaintiff an excessive amount of time and trump[ed] charges despite having visual evidence of [the] incident from 02.07.20." *Id.* at 30 (¶ 3). He claims that Attorney Bustamante wanted to turn "the incident into a burglary to satisfy his malicious interest and force a sentence onto plaintiff for a crime that was never committed" in violation of Plaintiff's equal protection rights under the Fourteenth Amendment. *Id.*

Plaintiff's fourth claim asserts that Costello "directly participated in a[n] unconstitutional act of negligence" by denying Plaintiff an ability to communicate his needs, by refusing to file a motion for bond, and by failing "to create a defense in a reasonable time or even attempting to get Plaintiff into a program" for his drug and mental health issues. *Id.* at 30-31 (¶ 4). He claims that Costello thereby denied him his Eighth Amendment and Fourteenth Amendment rights.

Plaintiff seeks $33,000 in compensatory damages and $13,000 in punitive damages. ECF No. 1 at 31. Plaintiff also seeks a preliminary and permanent injunction against Attorney Bustamante to "cease his prosecutorial misconduct." *Id.* at 33. He also seeks a temporary restraining order against a Corrigan counselor who is not otherwise named in the body of the complaint, Counselor Derose, for denying him the "right to have his suit e-filed." ECF No. 1 at 32. Plaintiff claims Counselor Derose is denying him access to the courts.

A. The Prosecutor Defendants

The Court construes Plaintiff's complaint as asserting malicious prosecution claims under § 1983 against the Prosecutor Defendants.

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). In order to prove a malicious prosecution claim under Connecticut law, Plaintiff would have to establish: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017) (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210-211 (2010)).

**\*6** Prosecutors receive absolute immunity from suit under § 1983 when they engage in "advocacy conduct that is 'intimately associated with the judicial phase of the criminal process.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (noting that prosecutorial immunity from § 1983 liability is broadly defined, and covers "virtually all acts," associated with prosecutor's function as an advocate).[6] "The absolute immunity accorded to government prosecutors encompasses not only their conduct during trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution ..., activities in deciding not to do so ..., and conduct of plea bargaining negotiations." *Barrett v. United States*, 798 F.2d 565, 571-572 (2d Cir. 1986) (citations omitted).

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, No. 19-3949-CV, 2022 WL 697663, at \*4 (2d Cir. Mar. 9, 2022). As the Second Circuit explained recently, "[a] narrow limitation to the scope of absolute immunity in § 1983 actions ... exists where the defect is jurisdictional — that is, where the prosecutor acted well outside the scope of authority, rather than where the defect relates ... to the prosecutor's motivation or the reasonableness of his official action." *Id.* at \*5. Thus, a prosecutor's immunity "extends even to a prosecutor who 'conspir[es] to present

false evidence at a criminal trial[,]' and [t]he fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Id.* at \*4 (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)) (emphasis in original).

Plaintiff's claims for damages against the Prosecutor Defendants arise out of their "conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case" and are thereby barred by the doctrine of prosecutorial immunity. Specifically, all of Plaintiff's claims against the Prosecutor Defendants revolve around the fact that he was improperly charged under a crime he did not commit and that the prosecutor improperly withheld "all evidence and offering Plaintiff prison time with no supporting facts." *See* ECF No. 1 at 29, ¶ 1. Taking these allegations as true, the Prosecutor Defendants are absolutely immune from these actions, as each of these actions were taken in furtherance of prosecutorial functions. *See Staton v. Holzbach*, No. 3:20-CV-631 (SRU), 2020 WL 6119382, at \*3 (D. Conn. Oct. 16, 2020) (prosecutor is absolutely immune for decision on whether to pursue or dismiss charges); *Hill*, 45 F. 3d at 662 (prosecutor was entitled to absolute immunity for claim that he withheld exculpatory evidence). Because there are no facts to suggest that any of the Prosecutor Defendants acted outside the scope of their roles in criminally prosecuting Plaintiff for the state, the claims against the Prosecutor Defendants for monetary damages are barred by absolute prosecutorial immunity and are dismissed with prejudice.

**\*7** Further, the only allegations related to Defendant District Attorney Smith are that he "was upset that Plaintiff had previously got a case dismissed due to exculpatory evidence and he was out to get me." ECF No. 1 ¶ 21. It thus appears that Plaintiff is accusing Defendant Smith of instructing Defendant Bustamante not to dismiss Plaintiff's case and to in fact seek a harsher sentence. A supervisory official, however, cannot be held liable under § 1983 on a theory of *respondeat superior. Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Therefore, Plaintiff fails to state a claim against Defendant Smith.

## B. Attorney Costello

Plaintiff asserts Fourteenth Amendment and Eighth Amendment claims against appointed defense counsel Costello. *See* ECF No. 1 ¶¶ 2, 4. Plaintiff's section 1983 claims

against Costello fail to state a claim because Costello is not a state actor for purposes of section 1983.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983). A section 1983 plaintiff must show a violation of a federally protected constitutional or statutory right which was the result of state action, or action "under color of law." *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994).

A court-appointed attorney "performing a lawyer's traditional functions as counsel" to a party is not a state actor under section 1983. *Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019) (summary order), *cert. denied*, 141 S. Ct. 434 (2020); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997); *Barfield v. Milling*, No. 3:14-CV-914 (VAB), 2015 WL 1737671, at \*4 (D. Conn. Apr. 16, 2015) (citing cases). Likewise, an attorney who serves as a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding or by virtue of their state law license. *Polk Cty. v. Dodson*, 454 U.S. 312, 318-19 (1981).

Accordingly, Attorney Costello is a private party. Although private parties are not generally liable under section 1983, the Court considers whether Plaintiff may bring his claims against Costello on the basis of any alleged conduct that may be considered state action. *See United States v. International Brotherhood of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). To show that the actions of a private party may be attributable to the state, thereby making the private party subject to liability under section 1983, the plaintiff must show "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation and quotation omitted).

Tsuma v. Costello, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 54 of 85

Plaintiff has not alleged facts to show that Defendant Costello engaged in conduct that could be considered fairly attributable to the state. No allegation suggests that Costello was compelled by the State to take the actions of which Plaintiff complains; that there was a sufficiently close nexus between the State and Costello's conduct; or that the conduct consisted of activity that has traditionally been the exclusive prerogative of the State. *See Hogan*, 346 Fed. App'x at 629. [7]

**\*8** Accordingly, Plaintiff's section 1983 claims are dismissed pursuant to section 1915A as lacking "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

### C. Disability Discrimination

Plaintiff's complaint refers to a violation of his rights under the ADA and the RA, but it fails to allege violation of the ADA or RA under his legal claims. See ECF No. 1 at 4 ¶ 1; *see id.* at 29-31.

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84–85 (2d Cir.), *corrected,* 511 F.3d 238 (2d Cir. 2004). Title II applies to any state or local government or instrumentality of a state or local government. *Id.* § 12131(1). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 of the RA states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any covered program or activity. *Id.*

In order to prevail on a claim under either Title II of the ADA or § 504 of the RA, a plaintiff "must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Under the second and third elements of this analysis, the court must consider whether any defendant has denied Plaintiff the opportunity to participate in or benefit from public services, programs, or activities, or has otherwise discriminated against him," by reason of his disability rather than a legitimate nondiscriminatory reason. *See Torrez v. Semple*, 2018 WL 2303018, at \*8 (D. Conn. May 21, 2018) (discussing second and third elements).

A qualified individual can base a discrimination claim on any of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

It is unclear against whom Plaintiff asserts his claims of disability discrimination or what conduct plaintiff claims to constitute violations of the ADA and RA. The complaint is devoid of factual allegations plausibly suggesting that Plaintiff was unable to access public programs due to his disability, that his disability prevented him from accessing public programs, or that he was denied any accommodations so that he could access such programs. Moreover, Plaintiff has not alleged facts suggesting that he was treated differently because of his disability. *See Gibbs v. Doe 1-7*, No. 3:20-CV-1119 (JAM), 2020 WL 7129584, at \*9 (D. Conn. Dec. 4, 2020) (dismissing ADA and RA claims because plaintiff failed to allege that "DOC discriminated against him because of his disability."); *Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) ("With no allegation of disparate treatment, no claim for discrimination under the ADA ... lies."). Accordingly, Plaintiff's ADA and RA claims must be dismissed as not plausibly alleged.

### D. Requests for Injunctive Relief

**\*9** In addition to monetary relief, Plaintiff seeks injunctive relief against the Defendants and Corrigan Counselor Derose. ECF No. 1 at 32.

A district court has wide discretion in determining whether to grant preliminary injunctive relief, however it is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *See Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (Sotomayor, J.). Specifically, in order to receive either a temporary restraining order or a preliminary injunction, a movant must establish "a threat of irreparable harm" and

Tsuma v. Costello, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 55 of 85

either (1) "a probability of success on the merits" or (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Moore*, 409 F.3d at 510 (internal citations omitted).

For the reasons outlined above, Plaintiff has failed to show a probability of success on the merits, or sufficiently serious questions going to the merits, for any of his claims against Defendants. As such, any request for injunctive relief against Defendants is denied.

Additionally, the Court denies the request for injunctive relief against Counselor Derose, who is not a party to this action. Plaintiff has not named Derose as a defendant and did not state any allegations against Counselor Derose in the body of his complaint. Rather, in the prayer for relief, Plaintiff alleges that Counselor Derose has obstructed his right to "e-file" his suit, has refused to notarize legal documents, and is denying him access to legal phone calls. Derose's status as a non-party precludes the Court from granting the requested injunctive relief. Except in limited circumstances not relevant here, "a Court may not order injunctive relief as to non-parties to the action." *Allen v. Brown*, No. 96-CV-1599, 1998 WL 214418, at *3 (N.D.N.Y. Apr. 28, 1998); *see Mitchell v. Cuomo*, No. 917CV0892, 2017 WL 8780773, at *6 (N.D.N.Y. Dec. 6, 2017) ("The Court has no power to enforce an injunction against individuals who are not parties to the lawsuit.... To the extent that Plaintiff seeks injunctive relief against ... any persons who are not parties ... the Court lacks subject matter jurisdiction to enjoin their actions."). Accordingly, Plaintiff's request for injunctive relief against Derose is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES the complaint in its entirety due to Plaintiff's failure to state any plausible federal claims for relief. *See* 28 U.S.C. § 1915A.

**SO ORDERED** at Hartford, Connecticut, this 6th day of April, 2022.

### All Citations

Not Reported in Fed. Supp., 2022 WL 1036819

---

### Footnotes

1    The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website reflects that Plaintiff is an unsentenced detainee housed at Corrigan.

2    *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for purposes of Section 1915A review, "[t]he Court must accept as true all factual matters alleged in a complaint").

3    Review of publicly-available information on the Connecticut Judicial Branch website shows that Plaintiff's criminal case for these charges is pending. *See* Case detail for K10K-CR20-0368088-S available at: https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending & Key=ae4f9f3b-56ed-4bb3-aad0-8bae5f256d9c.

4    Plaintiff's criminal case for these charges is still pending. *See* Case detail for docket K10K-CR20-0368197-S available at: https://www.jud2.ct.gov/crdockets/CaseDetail.aspx?source=Pending & Key=499a82cb-41a2-461c-8edd-ecd3527735c2.

5    In his claims, Plaintiff states that Defendants denied him equal protection of the law and violated his Fourteenth Amendment rights under "section 1 of the Fourteenth Amendment." Section one of the Fourteenth Amendment, which is the Citizenship Clause, states: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Reading Plaintiff's allegations together, the Court construes Plaintiff's allegations as asserting denial of his right to due process and equal protection under the Fourteenth Amendment.

Tsuma v. Costello, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 56 of 85

6    Absolute immunity does not apply to a prosecutor's "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings[.]" *Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)); *See Kalina v. Fletcher*, 522 U.S. 118, 125–27 (1997) (holding that prosecutor was not protected by absolute immunity because she was acting as an investigator when she signed a sworn affidavit attesting to the facts supporting an arrest warrant). Here, Plaintiff's claims arise from the Prosecutor Defendants' role as advocates in furthering their prosecutorial functions.

7    Nor can Plaintiff's allegations even generously be construed as alleging that Costello engaged in a conspiracy with state actors. *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.)

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 4194137
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Shaquan FRANKS, Plaintiff,

v.

Superintendant Stewart ECKERT; DSP Betty "Jo"
Gable; Doctor Jacqueline Levitt; IOB A. Acevedo;
and IOB Katherine Bergamasco, Defendants.

18-CV-589 EAW
|
Signed 07/21/2020

**Attorneys and Law Firms**

Shaquan Franks, Alden, NY, pro se.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

*1 Plaintiff Shaquan Franks ("Plaintiff"), who is no longer incarcerated, was formerly a state prisoner housed at the Wende Correctional Facility ("Wende"). While housed at Wende, Plaintiff filed an application to proceed *in forma pauperis* and a Complaint under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and 42 U.S.C. § 1983. (Dkt. 1). The Court granted Plaintiff's application to proceed *in forma pauperis* and, after conducting an initial review of the Complaint, severed and transferred claims that belonged in other district courts, and terminated from this action the defendants who worked at prisons located in other districts. (Dkt. 11) (the "Initial Screening Order"). The Court granted Plaintiff leave to file an Amended Complaint regarding his Wende claims only. (*Id.*). Plaintiff's Amended Complaint (Dkt. 13) is now before the Court for initial review.

For the reasons that follow, Plaintiff's deliberate indifference claim against defendant Dr. Jacqueline Levitt ("Dr. Levitt") shall proceed to service. All of Plaintiff's remaining claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

**FACTUAL BACKGROUND**

The factual background of this action is described in detail in the Court's Initial Screening Order, familiarity with which is assumed for purposes of this Decision and Order. As required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Plaintiff suffers from the eye disease keratoconus and on October 4, 2017, while incarcerated at Eastern Correctional Facility ("Eastern"), he had a corneal transplant. (Dkt. 11 at 5). Plaintiff was transferred from Eastern to Sullivan Correctional Facility in January 2018 and then to Wende in March 2018. (*Id.* at 5-6).

After his transfer to Wende, Plaintiff asked defendants IOB K. Bergamasco ("Bergamasco") and IOB A. Acevedo ("Acevedo") for "reasonable accommodations," but these defendants informed Plaintiff, in violation of policy, that he had to get reapproval before he could have his "reasonable accommodations." (Dkt. 13 at 4). Plaintiff told Bergamasco and Acevedo that he needed accommodations "to do everyday life things like 'reading-writing, et al.' " and that without accommodations he was in "a state of pain" due to light sensitivity. (*Id.*). He further informed them that the strain on his post-surgical eye could cause the corneal transplant to fail. (*Id.* at 5). Bergamasco and Acevedo nonetheless "overlooked [Plaintiff's issues] and he had to wait "almost 2 weeks" before receiving his accommodations. (*Id.*).

Even when Plaintiff received his accommodations, Bergamasco and Acevedo "refused to give [him] everything [he] was approved for," claiming that it was a security risk. (*Id.*). Plaintiff thereafter filed grievances and requests for information via the Freedom of Information Act, and discovered that neither Bergamasco nor Acevedo was qualified to be an "IOB" and that they were not "certified to deal with the blind or the legally blind." (*Id.*). Defendants DSP Betty "Jo" Gable ("Gable") and Superintendent Stewart Eckert ("Eckert") lied in their responses to Plaintiff's grievances, claiming that Bergamasco was a "low vision therapist." (*Id.* at 6). The failure to provide Plaintiff with all necessary accommodations resulted in "excruciating pain everyday" and his "transplant started failing," requiring outside hospitalization. (*Id.*).

*2 Further, when Plaintiff was transferred to Wende, Dr. Levitt discontinued all his pain medications and removed

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 58 of 85

all his medical permits, despite knowing that he was light sensitive and suffered from ongoing chest and head pains. (*Id.* at 7). Plaintiff's condition deteriorated, but Dr. Levitt refused to reissue his pain medications or his medical permits. (*Id.*). Plaintiff began to suffer from headaches so severe that he would vomit and Dr. Levitt still refused him medical treatment. (*Id.* at 8). Plaintiff filed grievances and wrote to Eckert regarding his medical treatment, but nothing was done. (*Id.*). Dr. Levitt eventually ordered an x-ray of Plaintiff's chest and a CAT scan of his brain, but two months after the x-ray was taken, she told Plaintiff that it had been lost. (*Id.* at 8-9). Dr. Levitt further refused to issue Plaintiff a medical permit for a clock. (*Id.* at 9-10). Plaintiff filed additional grievances, and Dr. Levitt retaliated against him by falsely claiming he was not taking his prescribed eye drops and having him "placed in the hospital" in Wende "for almost a week without rec or [his] personal stuff." (*Id.* at 10).

Plaintiff wrote a number of letters to Gable, who was in charge of programs at Wende, including "assigning of ... reasonable accommodations." (*Id.* at 12). Gable never answered any of these letters. (*Id.* at 12-13). However, Plaintiff claims that as retaliation for his repeated complaints (including filing grievances), he was "kicked ... out of the cell-study program without reason." (*Id.*).

Plaintiff wrote to Gabel about the officers in the Special Housing Unit ("SHU") taking his "reasonable accommodation" during a "cell-frisk" and "never giving it back," but she did not respond. (*Id.* at 13.) Plaintiff subsequently spoke to Gable while she was making rounds in the SHU. (*Id.* at 14). Gable confirmed that she had received his letters but told him she did not believe "her officers" would act in the way he alleged and further stated that she thought he had sold his reasonable accommodations to another inmate. (*Id.*). Plaintiff filed another grievance and also wrote a letter to Eckert, but nothing was done. (*Id.* at 14-15). Plaintiff wrote a letter to Gable complaining that his grievances were not being properly processed, but she never replied. (*Id.* at 15).

Plaintiff has suffered "retaliation/harassment" from officers and medical staff at Wende because of the grievances he has filed. (*Id.* at 17). Eckert was aware of this retaliation but refused to intervene "as a form of punishment." (*Id.*). In particular, and among other things, Plaintiff reported an incident in which he was left handcuffed "for almost 16 hours to [the] point [his] hand started turning blue," and Eckert refused to intervene. (*Id.* at 20-21). Instead, Eckert merely

"rubber stamp[ed]" the denial of Plaintiff's grievances. (*Id.* at 23).

Liberally construing these allegations, Plaintiff asserts the following claims arising out of his confinement at Wende: (1) Acevedo, Bergamasco, and Dr. Levitt failed to make "reasonable accommodations" necessitated by Plaintiff's post-eye surgery status in violation of the ADA and RA; (2) Dr. Levitt retaliated against him for his grievance writing in violation of the First Amendment; (3) Dr. Levitt denied him access to adequate medical care, in deliberate indifference to his serious medical needs, in violation of the Eighth Amendment; and (4) Eckert is complicit in all of the wrong-doing of the other defendants because he knew what was happening but failed to stop it.

## DISCUSSION

### I. Standard of Review

The Court is required to screen the Amended Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the Court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).

**\*3** In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("even

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 59 of 85

after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

As to Plaintiff' § 1983 claims, "[t]o state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). A supervisory official can be found to be personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates

by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

## II. ADA and RA Claims

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted). The statute provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (citing 42 U.S.C. § 12132). "To assure those requirements are met, 'reasonable accommodation' may have to be provided to the qualified individual." *Id.* at 73 (citation omitted). Similarly, the RA protects a "qualified individual with a disability" from being excluded from participation in, denied the benefit of, or subjected to discrimination "under any program or activity receiving Federal financial assistance," because of the individual's disability. 29 U.S.C. § 749(a). Although there are "subtle differences between the [A]cts," the purpose of both statutes is to prevent discrimination based upon disability and, as a result, courts generally apply the same legal standard for claims arising under Title II of the ADA and Title V of the RA. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

**\*4** To establish a prima facie violation of either statute, a plaintiff must show "(1) that [ ]he is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [ ]he was denied the opportunity to participate in or benefit from defendants services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *D.K. v. Teams*, 260 F. Supp. 3d 334, 368 (S.D.N.Y. 2017) (quoting *Powell v. Nat. Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004)). In addition to the outright denial of a reasonable accommodation, "[a] delay in providing a reasonable accommodation can violate the ADA, if that delay is caused by discriminatory animus and is sufficiently lengthy to constitute a constructive denial of a reasonable accommodation." *Wenc v. New London Bd. of Educ.*, No.

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 60 of 85

3:14-CV-0840 (VAB), 2016 WL 4410061, at *12 (D. Conn. Aug. 16, 2016), *aff'd*, 702 F. App'x 27 (2d Cir. 2017).

"Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act, although individuals can be sued in their official capacities under these statutes." *Keitt v. New York City*, 882 F. Supp. 2d 412, 456-57 (S.D.N.Y. 2011), *adopted*, 2011 WL 4526147 (S.D.N.Y. Sept. 29, 2011); *see also Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials").

Plaintiff makes no allegations to establish whether he is suing Acevedo, Bergamasco, and Dr. Levitt in their personal capacities, their official capacities, or both. Nevertheless, even assuming that Plaintiff intended to sue these defendants in their official capacities and that his post-surgery vision impairment qualified him as an individual with a disability, Plaintiff fails to state a viable ADA or RA claim. Although Plaintiff has alleged he was denied some of his requested reasonable accommodations, there are no facts in the Amended Complaint to suggest that defendants refused to allow Plaintiff to participate in any program or activity *because of* his disability. *See Roberts v. City of New York*, No. 14-CV-5198, 2016 WL 4146135, at *9 (S.D.N.Y. Aug. 2, 2016) (dismissing ADA claim where "[t]he complaint fail[ed] to allege that the plaintiff was excluded from participation in any program or activity, or otherwise treated differently, because of the disability"); *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514 at *19 (S.D.N.Y. Aug. 2, 2013) (dismissing plaintiff's ADA claim and explaining that "the Court need not engage in an extensive analysis of the ADA requirements because the plaintiff makes absolutely no allegation that he was discriminated against, or that Defendants failed to provide him with a reasonable accommodation—i.e., railings on the walkway or an alternative to traveling through the walkway—because of his disability[.]"); *Rosado v. Herard*, No. 12-CV-8943, 2014 WL 1303513, at *6 (S.D.N.Y. Mar. 25, 2014) (dismissing ADA and RA claims where plaintiff failed to "plead[ ] facts demonstrating that he was denied access to therapeutic group sessions because of a disability").

Further, with respect to the alleged delay in providing reasonable accommodations, Plaintiff has not set forth any facts to suggest that the delay was based on discriminatory animus or that the two-week delay was "sufficiently lengthy

to constitute constructive denial." *Wenc*, 2016 WL 4410061, at 12; *cf. Lewis v. Boehringer Ingelheim Pharm., Inc.*, 79 F. Supp. 3d 394, 411 (D. Conn. 2015) (eight or nine month delay could constitute a failure to accommodate); *O'Toole v. Ulster County*, No. 12–CV–1228, 2014 WL 4900776 at *8 (N.D.N.Y. Sept. 30, 2014) (six month delay in providing ergonomic chair unreasonable); *Logan v. Matveevskii*, 57 F.Supp.3d 234, 271 (S.D.N.Y. 2014) ("[C]ourts have found plaintiffs' requests for reasonable accommodations to have been constructively denied after delays approximating four months." (collecting cases)).

**\*5** Finally, Plaintiff's claim that he was not provided with all the accommodations he requested also fails to state a claim. "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (citations omitted). Here, the only specific accommodation Plaintiff claims he was not provided is a "clock or a watch" (*see* Dkt. 13 at 6), and he has failed to state what other accommodations he was provided or to explain why, as he claims, the failure to provide a clock somehow caused him to use his eye drops only three times per day rather than four times per day. Plaintiff has not plausibly alleged that he was denied reasonable accommodations.

For these reasons, Plaintiff's ADA and RA claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III. Retaliation

Plaintiff alleges a claim for retaliation against Dr. Levitt who allegedly falsely, and in retaliation for his filing of grievances, said that he was "not taking the eye drops and had [him] placed in the hospital" at Wende for almost one week where he was without his personal items and was denied recreation. (Dkt. No. 13 at 10.)

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g., Colon*, 58 F.3d at 872. To state a retaliation, claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (internal quotation and citation

omitted). As to the second prong, Plaintiff must allege that the protected conduct was "a substantial or motivating factor in the prison officials' decision to discipline [him]." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon*, 58 F.3d at 872-73.

Here, applying this standard, the Court finds that Plaintiff's retaliation claim against Dr. Levitt must be dismissed. Assuming that Dr. Levitt's action of transferring Plaintiff to the hospital constituted the kind of adverse action that could sustain a retaliation claim, Plaintiff has failed to allege any facts to establish the necessary causal connection. There are no facts in the Amended Complaint from which the Court could infer that Plaintiff submitted grievances against Dr. Levitt close in time to when she sent him to the hospital. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (explaining that a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."). Further, there are no allegations to suggest that Dr. Levitt's behavior was motivated by anything other than the belief that Plaintiff was not properly using his eye drops—Plaintiff himself acknowledges that he struggled to take his eye drops as prescribed. (*See* Dkt. 13 at 9 (stating that Plaintiff was only taking three eye drops per day when he was meant to take four)). Plaintiff has not plausibly alleged that Dr. Levitt retaliated against him.

Further, to the extent Plaintiff may have been trying to assert a retaliation claim against Gable, it must fail also. There are no allegations in the Amended Complaint from which a reasonable factfinder could conclude that Gable took any manner of adverse action against Plaintiff. *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (holding that, to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment). In particular, while Plaintiff claims he was kicked out of the cell-study program, he does not allege that Gable was responsible for this action. Accordingly, Plaintiff's retaliation claim must be dismissed in its entirety.

**IV. Denial of Medical Care in Violation of the Eighth Amendment**

**\*6** Plaintiff alleges that Dr. Levitt discontinued his pain medication and removed his medical permit even though she knew that Plaintiff was very light sensitive and having ongoing chest and head pains. Plaintiff saw Dr. Levitt at sick call several times, but she refused to reissue his pain medicine or his medical permits. Plaintiff's head and chest pain got so bad that he became dizzy, got bad headaches, and started vomiting. He again went to sick call, but Dr. Levitt refused to treat him.

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the Eighth Amendment's prohibition against the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). With respect to the objective element, the plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Here, reading the allegations of the Amended Complaint in the light most favorable to Plaintiff, the Court finds that his deliberate indifference claim against Dr. Levitt is sufficient to proceed to service.

**V. Supervisory Liability**

Finally, Plaintiff alleges that Eckert is liable for failing to prevent or correct the wrongdoing of the other defendants. As the Court has found that all claims other than Plaintiff's deliberate indifference claim must be dismissed, the Court limits its analysis to this claim. *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 388 (S.D.N.Y. 2009) ("The failure to state a claim for an underlying constitutional violation forecloses supervisory liability.").

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 62 of 85

Plaintiff's allegations with respect to the letters he wrote Eckert are vague and conclusory. For example, Plaintiff states that after he signed up for sick call and Dr. Levitt deliberately refused to treat him, he "sent a letter" to Eckert "and once again nothing was done to put a stop" to Dr. Levitt's wrongdoing. (Dkt. No. 13 at 8.) But nowhere does he suggest what he wrote to Eckert that might have put Eckert on notice that Dr. Levitt was violating his constitutional rights. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (concluding that the defendant's receipt of a letter from a plaintiff generally complaining about the conditions of confinement was insufficient to put defendant "on actual or constructive notice of the violation"); *Lombardo v. Freebern*, No. 16-CV-7146 (KMK), 2018 WL 1627274, at *13 (S.D.N.Y. Mar. 30, 2018) (finding that a supervisor's "presumed knowledge, without more, is ... insufficient to establish personal involvement.") (quoting *Burgess v. Wright*, No. 08-CV-725, 2009 WL 2971538, at *6 (N.D.N.Y. Sept. 11, 2009)). [1]

**\*7** Further, Eckert's failure to respond to Plaintiff's letters, by itself, is insufficient to hold Eckert responsible for the constitutional violations of others, because "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Winthrow v. Goord*, 374 F. Supp. 2d 326, 329 (W.D.N.Y. 2005) (quoting *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 374 (W.D.N.Y. 2005)). *See also Johnson v. Rock*, No. 9:14-CV-815 DNH/ATB, 2014 WL 7410227, at *11 (N.D.N.Y. Dec. 31, 2014). "It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Brown v. Montone*, No. 17-CV-4618 (KMK), 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018) (quoting *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017) (alterations and internal quotation marks omitted)).

For these reasons, Plaintiff's supervisory liability claim against Eckert is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## VI. Leave to Amend

The Court recognizes that "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). However, the Court has already given Plaintiff the opportunity to amend once and, despite his comprehensive effort, he has been unable to sufficiently state a claim against any defendant other than Dr. Levitt. The Court accordingly dismisses all of Plaintiff's claims except his deliberate indifference claim against Dr. Levitt without leave to amend.

## CONCLUSION

For the reasons set forth above, Plaintiff's deliberate indifference claim against Dr. Levitt will proceed to service. All of Plaintiff's remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## ORDER

IT HEREBY IS ORDERED, that Plaintiff's ADA, RA, retaliation, and supervisory liability claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with prejudice and without leave to amend; and

FURTHER, that the Clerk of Court is directed to terminate Stewart Eckert, Betty Jo Gable, A. Acevedo, and Katherine Bergamasco as defendants in this matter; and

FURTHER, that the Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, the Amended Complaint (Dkt. 13) and this Order upon Dr. Levitt, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and

FURTHER, the Clerk of Court is directed to forward a copy of the Amended Complaint and this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'Brien@ag.ny.gov>; and

FURTHER, that, pursuant to 42 U.S.C. § 1997e(g), Dr. Levitt is directed to respond the Amended Complaint upon service.

SO ORDERED.

Attachment

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 63 of 85

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

United States District Court

Western District of New York

"Amended Complaint"    18-cv-589


Shaquan Franks # 12A1270

                v.

Wende Correctional Facility   Defendants

Superintendent Stewart Eckert

DSP  Betty "Jo" Gabel, Doctor Jacqueline Levitt,

J.O.B. A. Acevedo, J.O.B. Katherine Bergamasco

    1983  Civil Action Complaint

Requesting A Bench trial By Federal Judge

MR FRANKS Brings this action under title 2 of

the Americans with Disabilities Act, 42 U.S.C. Sect

Sect 12131 Et SEQ (the ADA), Sect 504 of the

Rehabilitation Act, 29 U.S.C. Sect 794, as Well as

Under 42 U.S.C. Sect 1983 For violations of my

Rights under the 5,8, and 14 amendment of the

United States Constitution.

I MR FRANKS Has Suffered Retaliation By Crtain

Defendants in violation of the ADA, And the

Retaliation Act, of my Constitutional Rights.

I MR FRANKS Seeks injunctive Relief Directing

the Defendants to Provide Reasonable accommodation

For my disability and to seek monetary and Punitive

Damage For Long term Life injury.


Wende Correctional Facility Special Housing Unit

"March 12 2018" I Was Moved From "Sullivan Correctional

Facility" to "Wende Correctional Facility" why I Dont Know

But once I Was Placed in the "SHU" I asked For My

Reasonable accommodations But the "J.O.B. K. Bergamasco"

along with "J.O.B A. Acevedo" told Me I Have to Get

Reapproved to Get my Reasonable accommodations when I

Was Already approved From A other Facility when the

"D.I.B. 3610 States all accommodations Will Follow You" And I

told Both of them I NEED my accommodations to Do Everyday

Life things Like "Reading, writing, et al" and without the

accommodations I'm Left in a State of Pain

Because I'm VERY light Sensitive

**Franks v. Eckert, Not Reported in Fed. Supp. (2020)**

Case 3:24-cv-00268-MAD-ML Document 12 Filed 07/03/24 Page 64 of 85

AND the STRAIN OF the POST-SURGICAL EYE IS NOT GOOD
FOR the TRANSPLANT which WILL FAIL AND LEAVE ME BLIND
IF LEFT without MY EYE DROPS/ACCOMMODATIONS But they Both
OVER looked MY ISSUES AND I HAD to wait ALMOST A weeks
BEFORE GETTING MY ACCOMMODATIONS AND WHEN I DID GET MY
ACCOMMODATIONS they REFUSED to Give ME EVERYTHING I WAS APPROVED
FOR SAYING It's A SECURITY RISK to HAVE WHEN" D.I.R 2612
PAGE 14 OF 14 States Other wise" So I WROTE GRIVANCES which
FAILED to HELP ME So I later F.O.I.L REQUESTED to See IF
they HAD CERTIFICATION to BE A "I.O.B. AND NONE OF
them WAS ACCREDITED CERTIFIED to DEAL with the BLIND OR
the legally BLIND Let ALONE HANDLE the REASONABLE ACCOMMODATIONS
But the "DEPT BETTY-JO GIMBLE ALONG with the

MaxiAids                                                    Item#: 2071000

"SUPERINTENDENT STEWART ECKERT" LIED IN MY GRIVANCES SAYING
the "I.O.B. K. BERGAMASCO" WAS A LOW VISION THERAPIST So
I F.O.I.L this to See IF it WAS TRUE AND NO CERTIFICATION
EXIST FOR that UNDER HER NAME AND I also REQUESTED A
Clock OR A WATCH So I CAN TAKE Post-SURGERY EYE DROPS
So the TRANSPLANT wont FAIL AND BECAUSE I ANT GET this
MY TRANSPLANT STARTED FAILING BECAUSE I WAS UNABLE
to TAKE MY EYE DROPS ON A time AS the EYE-SPECIALIST
ORDERED So that LEFT ME IN EXCRUCIATING PAIN EVERYDAY to
the Point I HAD to BE SENT to A OUTSIDE Hospital MORE then
ONCE AND it STRESSED ME Out SO BAD I WAS SENT to "MHU/OMSO"
BECAUSE the FACILITY FAILED to ACCOMMODATE ME while at
WENDE CORRECTIONAL FACILITY.

MaxiAids                                                    Item#: 2071000

WENDE CORRECTIONAL FACILITY SPECIAL HOUSING UNITE
"MARCH 12 2018" I WAS MOVED FROM "Sullivan CORRECTIONAL
FACILITY" to "WENDE CORRECTIONAL FACILITY" WHY I DON'T KNOW
But ONCE I Got to Jail "DR Jacqueline LEVITT" DISCONTINUE
MY PAIN MEDS AND REMOVED ALL MY MEDICAL PERMITS KNOWING
I'm VERY Light SENSITIVE AND I HAVE A ON GOING CHEST AND
HEAD PAINS WHICH LEAVE ME IN EXCRUCIATING PAIN WHEN
LEFT UNTREATED AND I PUT DOWN FOR SICK-CALL A number
OF times AND SHE REFUSE to REISSUE MY PAIN MEDS OR
MY MEDICAL PERMENTS So I WROTE GRIVANCES About the
MEDICAL treatment I WAS GETTING HERE At WENDE At which
Point MY CHEST AND HEAD PAINS Got WORST AND I
STARTED FEELING DIZZY ALL the time AND I WAS GETTING

MaxiAids                                                    Item#: 2071000

REAL BAD HEADACHES AND it Got So BAD I STARTED
VOMITING ONCE AGAIN I SIGNED UP FOR SICK-CALL
AND ONCE AGAIN "DR J. LEVITT" DELIBERATELY REFUSED ME
treatment So I WROTE MORE GRIVANCES About the MEDICAL
treatment AS WELL AS SENDING A letter to the
"DEPT OF Health MS. NEAL" At which Point NONTHING
WAS DONE I EVEN SENT A letter to the "SUPERINTENDENT
S.ECKERT" AND ONCE AGAIN NONTHING WAS DONE to Put
A Stop to the WRONG DOING OF "DR J. LEVITT" So I WROTE
the "DEPT OF Health" UP So AFTER A while "DR J. LEVITT"
PUT ME IN FOR A X-RAY AND A BRAIN CAT Scan But
After the X-RAY Almost 5months Gone BY with NO ANSWER
So ONCE AGAIN I SIGNED UP to Sick-Call to ASK About

MaxiAids                                                    Item#: 2071000

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 65 of 85

MY X-RAY AND At whitch Point "Doctor J. Levitt" told me they
Lost the X-RAY of my CHEST so I wrote a Grivance About this
AND I told MHU STAFF About this so they can try to Help me
Now I Have to take Post-SURGERY EYE Drops 4 times a Day
to Keep My CORNEA transplant FROM Failing Cause if it Fails I
may Be left Blind or worse I can Lose the EYE NOW without
MY REASONABLE ACCOMMODATION OF A talking watch OR A Clock
I was MISSING ONE DROP So I was ONLY Getting 3 times A DAY
WHEN it SHOULD BE 4 times A DAY So I SIGN UP FOR Sick-Call
to talk to "DR. J. Levitt" to SEE if so SHE ISSUE me a medical
PERMENT Do the Fact I HAVE A MEDICAL NEED FOR ONE
AGAIN SHE DELIBERATELY REFUSE to ISSUE ME A MEDICAL
PERMENT FOR A Clock So I Can take MY EYE DROPS ON
time AND Not miss A DROP Do to the Fact I DONT
KNOW the time while IN the SHU So AFTER MONTHS OF
Going theought this with miss DROPS MY CORNEA transplant
Started Failing so the EYE Started turning RED AND
the CORNEA was turning GRAY which Put ME IN
EXCRUCIATING PAIN to the Point I HAD to BE RUSHED to
the OUTSIDE HOSPITAL A NUMBER OF times FOR CORNEA
Failure AND "Doctor J. Levitt" REFUSE to GIVE me meaning-
Full treatment So I wrote MORE GRIVANCES AND AS A
Retaliation to the GRIVANCES "DOCTOR J. Levitt" SAID I was
Not taking the EYE DROPS AND HAD ME PLACED IN the
HOSPITAL HERE the Facility FOR Almost A WEEK without
REC OR MY PERSONAL STUFF AND ONCE AGAIN I WROTE

this UP But this is Just to SHOW HOW "Doctor J. Levitt"
Retaliated OGainst ME so Do to MY GRIVANCES AND
How SHE DELIBERATELY REFUSE to GIVE ME MEANING-Full
MEDICAL treatment while At WENDE CORRECTIONAL Facility.

WENDE CORRECTIONAL Facility

"DEPT OF PROGRAM BETTY "JO" Gable" was IN CHARGE OF the
ASIGNING OF the REASONABLE ACCOMMODATIONS AS well AS
Being IN CHARGE OF All PROGRAMS HERE At "WENDE CORRECTIONAL
Facility" NOW I wrote a NUMBER OF LETTERS to HER which SHE
NEVER ANSWERED About HOW I was BEING DENIED
SCHOOL BASED OFF MY DISABILITY So I wrote this UP AND At
which Point they Let me Do CELL-STUDY But the CELL-Study
teacher NEVER sent the WORK IN LARGE PRINT AND ONCE
AGAIN I wrote this UP AS well AS SENDING a letter to the
"DEPT OF PROGRAM BETTY "JO" Gable" which AGAIN SHE NEVER answered
AND AS A Retaliation to MY GRIVANCE ON this ISSUE they Kicked
ME OUT OF the CELL-Study PROGRAM without REASON AND ONCE

**Franks v. Eckert, Not Reported in Fed. Supp. (2020)**

Again I wrote the "Dept of Program Betty "Jo" Gable" as well as

a Grievance and nonthing was ever done to right the wrong

doing of the cell-study teacher on the school program here at

"Wende Correctional Facility" Now I wrote the "Dept of Program

Betty "Jo" Gable" about the officers in the SHU taking my

reasonable accommodation out of my cell during a cell-frisk

and never giving it back once again she never answer my

letter So I wrote a Grievance about this and nonthing was

done and again the officers in the SHU take my reasonable

accommodations out my cell during a cell-frisk and never

giving it back this time I wrote a Grievance and sent a

letter to "Superintendent S. Eckert" as well as the "Dept of Program

Betty "Jo" Gable" and nothing was ever done to put a stop to the

wrong doing of the officers here in the SHU at

"Wende Correctional Facility" Now I got to see the "Dept of

Program Betty "Jo" Gable" as she made rounds in the SHU

I asked her did she get my letters she said she did

So I asked her when I'm going to get my "Reasonable

Accommodations" back that officer take She said she dont

believe her officers will do that as well as add she think

I said my reasonable accommodations to someone So I

wrote a Grievance on her as well as sending a a letter

to the "Superintendent S. Eckert" and nonthing was ever

done and I was left almost 2 weeks without my

accommodation while in the SHU here at "Wende

Correctional Facility" Now I wrote "Dept of Program Betty "Jo" Gable"

MaxiAids                                                           Item#: 2071000

About a issue I was having with the "I.G.R.C. Supervisor

Miss Filling my Grievances as well as Dismissing my

Grievances without Reason as well as Giving me her

Personal of views on my Grievances and not letting me

use the audio/video as a withness to my Grievances and

one once again she never answered my letter So I

wrote a Grievance on the "I.G.R.C. Supervisor as well as

a number of other Grievances on her and nonthing was

ever be done to help me with this issue well at

"Wende Correctional Facility" Now I was having a issue with

the "ORC S. Jackson" that work in the SHU denying me

Transitional Service so I can find Housing/Programs

that help people with Disability and the "ORC S. Jackson"

MaxiAids                                                           Item#: 2071000

Refused to help me and was telling other inmates

my personal business and was very rude to me a number

of times I wrote "Dept of Program Betty "Jo" Gable" as well as

telling her in person when she made rounds in the

SHU and she never did nonthing to help with my issues

So I wrote a number of Grievances on the "ORC S. Jackson"

as well as sending a letter to the "Superintendent S. Eckert"

and nonthing was ever done and I never got

Transitional service to help be with my Reentry to

the Community while at "Wende Correctional Facility".

MaxiAids                                                           Item#: 2071000

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 67 of 85

WENDE CORRECTIONAL FACILITY

"SUPERINTENDENT STEWART ECKERT" is the HEAD OFFICER HERE AT WENDE CORRECTIONAL FACILITY AS WELL AS the LAST PERSON to REVIEW YOUR GRIVANCES BEFORE they ARE SENT to C.O.R.C. FOR the LAST REVIEW/ANSWER NOW I'VE BEEN DEALING With RETALIATION/HERASSMENT FROM the OFFICERS AS WELL AS MEDICAL STAFF HERE AT "WENDE CORRECTIONAL FACILITY" BECAUSE OF GRIVANCES I WROTE ON THEM OR THEY SUPERVISOR AND the "SUPERINTENDENT STEWART ECKERT" KNOWS this But REFUSE to INTERVENE With THESE ON GOING HERASSMENT OF RETALIATION AS A FORM OF PUNISHMENT WHILE AT "WENDE CORRECTIONAL FACILITY".

NOW I HAD OFFICERS BANG ON the BACK OF MY CELL WALL FROM the CATWALK A NUMBER OF NIGHTS AFTER I WROTE GRIVANCES ON THEM AS WELL AS WRITE FAKE DISCIPLINARY REPORTS ON ME AND WHEN I WRITE A GRIVANCE ASKING FOR the VIDEO/AUDIO AS A WITHNESS the I.G.R.C SUPERVISOR ALWAYS SAY I CAN'T USE the AUDIO/VIDEO AS A WITHNESS I HAD OFFICER'S/LT's tell ME MEDICAL DON'T EXIST FOR ME WHEN I WAS IN EXCRUCIATING PAIN FROM MY POST-SURGERY EYE AND AT WHICH POINT MY CORNEA TRANSPLANT WAS FAILING AND the "SUPERINTENDENT STEWART ECKERT" HAD FIRST HAND INFORMATION OF this But REFUSE to INTERVENE

With THESE ON GOING NEW HERASSMENT OF RETALIATION AS A FORM OF PUNISHMENT I WAS ALSO PLACED ON 1 ON 1 WATCH WHILE IN the SHU AND AT WHICH POINT I ASKED FOR MEDICAL But NONE OF the OFFICER'S WILL CALL MEDICAL FOR ME AS WELL AS STOPING A NUMBER OF "DEPT's" WHILE they MADE ROUNDS IN the SHU AND the 1 ON 1 LOG BOOK WILL SHOW this AND DURING this TIME ON 1 ON 1 WATCH they NEVER CAME to GIVE ME MY POST-SURGERY EYE DROPS AND I WAS NEVER GIVING NO SLIPPERS OR BED MATS COUSE ON 1 ON 1 WATCH THESE ARE THINGS YOU MUST HAVE IN YOUR CELL AND I WAS LEFT WITHOUT THESE THINGS FOR A FEW DAYS AND the

OFFICER'S DID NOT FEED ME COUSE I ANT TURN MY LIGHTS ON EVEN AFTER I TOLD HIM I'M VERY LIGHT SENSTIVE AND that's WHY I GOT A LAMP SO I WONT TURN ON the OVER HEAD LIGHT But BEING that I'M ON 1 ON 1 WATCH I DON'T GOT MY LAMP AND HE OVER LOOKED MY ISSUE AND DID NOT FEED ME AND WHILE I WAS ON 1 ON 1 WATCH I WAS COMING OUT to GET EYE DROPS But the HAND CUFFS WAS VERY TIGHT AND I TOLD the OFFICER this AND HE SAID I REFUSE to GIVE the CUFFS BACK AND I WAS LEFT HAND CUFFED FOR ALMOST 16 HOURS to POINT MY HAND STARTED TURNING BLUE AND I ANT HAVE NO FEELING

MaxiAids                                    Item#: 2071000

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 68 of 85

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

IN MY LEFT HAND FOR almost 3 DAYS AND ONCE AGAIN "SUPERINTENDENT STEWART ECKERT" HAD FIRST HAND INFORMATION DO to the FACT HE HAS the LAST SAY ON ALL GRIVANCES BEFORE they GO to C.O.R.C. BUT HE REFUSED to INTERVENE with these ON GOING HERASSMENT OF RETALIATION AS A FORM OF PUNISHMENT I HAD OFFICERS tell ME to GO FUCK MYSELF AND How ME GETTING EYE DROPS IS A BIG FUCKING GAME then Put the CUFFS SO tight it BROKE the SKIN AND ~~the whole~~ MY WRIST STARTED Swelling UP AND this IS ALL ON VIDEO/AUDIO. I ALSO WROTE FOR F.O.I.L REQUEST A NUMBER OF times

MaxiAids                                                      Item#: 2071000

AND the F.O.I.L STAFF DELIBERATELY SENT ME the WRONG ~~the~~ things A NUMBER OF times AND I WROTE the "SUPERINTENDENT STEWART ECKERT" About this AND NONTHING WAS DONE to RIGHT the WRONG DOING OF the F.O.I.L. STAFF. I HAD the GRIVANCE SGT COME AND WAKE ME UP AT "12:00 AM" to ANSWER A GRIVANCE I WROTE ON A "CO" with the CO I WROTE the GRIVANCE ON AND WHEN I told HIM I HAD withness to this HE SAID You SAID it HAPPENED FROM the COTWALK SO HOW CAN YOU OR ANYBODY ELSE SEE WHO DID this ONCE AGAIN I WROTE this UP AND NONTHING WAS EVER DONE. NOW I HAD A ON GOING ISSUE About MY REASONABLE ACCOMMODATIONS that I WAS

MaxiAids                                                      Item#: 2071000

NOT BEING GIVING AND SHOWED WHY I NEED them AND HOW the SHU STAFF WAS taking REASONABLE ACCOMMODATION out OF MY CELL DURING A CELL FRISK AND NEVER GIVING it BACK AND How the "DEPT OF PROGRAM BETTY "JO" Gable" LIED A NUMBER OF times IN GRIVANCES About these ACCOMMODATIONS I WAS NOT GETTING AND ONCE AGAIN the "SUPERINTENDENT STEWART ~~Oz~~ ECKERT" DID NONTHING But Rubber STAMP All MY GRIVANCES WHEN HE HAS the POWER to INTERVENE But WONT Put A STOP ~~o~~ tO the WRONG DOING OF HIS OFFICERS SO there FOR it's Just AS HE'S DOING WRONG HIS-SELF AND NONE OF MY ISSUE ~~which~~ HAS BEEN FIX to this DAY AND the "SUPERINTENDENT STEWART ECKERT" CONTINUALLY REFUSE to INTERVENE with these ON GOING HERASSMENT OF RETALIATION AS FORM OF PUNISHMENT WHILE AT "WENDE CORRECTIONAL Facility".

_____

Sworn to before me this

24th day December 2018

NOTARY PUBLIC STATE OF NEW YORK
ERIE COUNTY
OF _____
COMM EXP   3-10-22

_____

MaxiAids                                                      Item#: 2071000

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 69 of 85

Franks v. Eckert, Not Reported in Fed. Supp. (2020)

WENDE RD., P.O. BOX 1187
AIDEN - NEW YORK - 14004 - 1187
taQUAN FRANKS # 12A1370

USDC - WDNY
NOV 3 8 2018
BUFFALO

CLERK, I
UNITED
BUFFAl

EGAl
MAil

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4194137

## Footnotes

1    The same analysis applies to Plaintiff's claim that Eckert failed to respond to his complaints about retaliation by other, unnamed employees at Wende.

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by    Matagrano v. New York State Department of Corrections and Community Supervision,,    N.D.N.Y.,    December 14, 2020

2014 WL 1303513
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Tyrone ROSADO, Plaintiff,
v.
Daphnee HERARD, Defendant.

No. 12 Civ. 8943(PGG)(FM).
|
Signed March 25, 2014.

### MEMORANDUM OPINION & ORDER

PAUL G. GARDEPHE, District Judge.

**\*1**  *Pro se* Plaintiff Tyrone Rosado brings this action, pursuant to 42 U.S.C. § 1983, alleging that Defendant Daphnee Herard—a mental health clinician at Rikers Island—violated his constitutional, statutory, and common law rights by denying him and other Spanish-speaking detainees at the George R. Vierno Detention Center at Rikers Island access to "therapeutic group sessions," and by disclosing to other detainees that Rosado has H.I.V. (Cmplt.(Dkt. No. 2); Am. Cmplt. (Dkt. No. 25)) Defendant has moved to dismiss the Complaint. (Dkt. No. 30) In an August 28, 2013 order, this Court referred the motion to Magistrate Judge Frank Maas for a Report and Recommendation ("R & R"). (Dkt. No. 35) On November 25, 2013, Judge Maas issued a 25–page R & R recommending that the Court grant Defendant's motion in part and deny it in part. (Dkt. No. 42) For the reasons stated below, this Court will adopt the R & R in part and modify it in part.

### BACKGROUND[1]

Rosado is a pre-trial detainee in the custody of the New York City Department of Correction at Rikers Island. (Dkt. No. 52) On July 17, 2012, Rosado was assigned to the Rikers Island Mental Health Assessment Unit for Infracted Inmates (the "Mental Health Unit" or the "Unit") (Am.Cmplt.(Dkt.

No. 25) ¶ 6) Rosado suffers from bipolar disorder and anti-social personality disorder, as well as H.I.V. (Pltf.Affirm. (Dkt. No. 36) at 7) Defendant Herard—a licensed mental health clinician—is responsible for treating detainees, such as Rosado, who are confined in punitive segregation in the Unit. (Amended Cmplt. (Dkt. No. 25) ¶ 5)

While Rosado was in the Unit, he was denied access to "therapeutic group sessions." (*Id.* ¶ 7) According to Rosado, other inmates—"mainly Spanish speaking detainees" like himself—were also prohibited from participating in these sessions. (*Id.*) Rosado complained to Herard about being "denied access to his therapeutic group sessions," but received no response. (*Id.* ¶¶ 8–9) He then filed a complaint against Herard through the facility's Inmate Grievance and Request Program ("I.G.R .P."), challenging the denial of access to group sessions. (*Id.* ¶ 10)

Herard was informed of Rosado's grievance, which alleged that she was "discriminating against Spanish speaking mental health detainees by den[y]ing them their right to parti[ ]cipate in [the group] therapeutic treatment." (*Id.* ¶ 11) Herard visited Rosado in his cell and "inquired as to why he [had filed] a grievance." (*Id.* ¶ 12) Rosado responded by asking Herard why "only African American[ ] inmates [were] allow[ed] to attend ... group session[s] an [d] not Spanish speaking inmates." (*Id.*) Defendant then "became [agitated] and [belligerent]" and "stated out loud that [Rosado was] just mad because [he was] on the verge of dying because he[']s (H.I.V.-positive)." (*Id.* ¶ 13)

After this exchange, other detainees asked Herard about her encounter with Rosado. (*Id.* ¶ 14) Herard told these inmates that "Rosado was indeed H.I.V.-positive." (*Id.*) As a result, Rosado's medical condition "became known throughout the prison." (*Id.* ¶ 16) Rosado alleges that, because of Herard's disclosures, he suffered "psychological episodes of mental anguish" in the form of "depression, insomnia, scornful [harassment], headaches, inability to [concentrate], fatigue, [and] loss of appetite"; "became annoyed [continually]"; was "a target of gossip [and r]umor[,] as well as harassment by prisoners which might lead to inmate on inmate violence"; and suffered anxiety and panic attacks. (*Id.* ¶ 17)

**\*2**  Rosado's original complaint, dated November 27, 2012, was received by the *Pro Se* Office on December 7, 2012. (Cmplt.(Dkt. No. 2)) On July 19, 2013, Defendant filed a motion to dismiss. (Dkt.Nos.29, 30) On July 31, 2013, Rosado filed an Amended Complaint. (Am.Cmplt. (Dkt. No. 25))

Defendant has requested that her motion to dismiss be deemed to address the Amended Complaint. (Dkt. No. 29)

On August 28, 2013, this Court referred the motion to Magistrate Judge Maas for a Report and Recommendation ("R & R"). (Dkt. No. 35) On November 25, 2013, Judge Maas issued an R & R concerning the motion. (Dkt. No. 42)

Reading Rosado's pleadings liberally, Judge Maas concluded that Rosado had asserted claims under (1) the Privacy Act, 5 U.S.C. § 552A; (2) the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d et seq.; (3) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (4) the Rehabilitation Act, 29 U.S.C. § 794 et seq.; (5) the First Amendment; (6) the Fourteenth Amendment; and (7) New York state law. Rosado v. Herard, No. 12 Civ. 8943(PGG)(FM), 2013 WL 6170631, at *3 (S.D.N.Y. Nov. 25, 2013). Judge Maas determined that Rosado's First Amendment retaliation claim, his ADA and Rehabilitation Act claims—to the extent they seek non-monetary relief against Herard in her official capacity—and his state law claims should be permitted to proceed. Id. at *11. Judge Maas recommended that Rosado's remaining claims be dismissed. Id.

On December 4, 2013, Rosado filed objections to the R & R. (Dkt. No. 48) Rosado argues that Judge Maas erred in concluding that Rosado's Fourteenth Amendment deliberate indifference and equal protection claims should be dismissed. This Court construes Rosado's objections as including the argument that Judge Maas erred in not addressing his "state-created danger" theory of liability under the Fourteenth Amendment. In submissions dated December 9, 2013, and January 21, 2014, Defendant objects to the R & R, arguing that the Amended Complaint should be dismissed in its entirety. (Dkt.Nos.44, 50)

## DISCUSSION

### I. LEGAL STANDARD

#### A. Review of Magistrate Judge's Report and Recommendation

In evaluating a Magistrate Judge's R & R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1). When a timely objection has been made to an R & R, "[the district judge] shall make a de

novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. " '[T]o the extent ... that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R & R] strictly for clear error.' " DiPilato v. 7–Eleven, Inc., 662 F.Supp.2d 333, 339 (S.D.N.Y.2009) (quoting IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07–CV–6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008)). Although "[t]he objections of parties appearing pro se are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest,' ... even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." Id. at 340 (quoting Milano v. Astrue, No. 05 Civ. 6527(KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008)).

*3 Here, Rosado's objections to the Magistrate Judge's findings concerning his deliberate indifference and equal protection claims lack specificity. Rather than addressing the Magistrate Judge's analysis, Rosado simply reiterates his arguments that "Defendant Daphnee Herard deliberately and recklessly retaliated against Plaintiff for daring to file a grievance against the Defendant" and acted "with deliberate indifference to his physical safety." (Pltf. Objections (Dkt No. 48) at 3) Moreover, Rosado has not objected to the Magistrate Judge's recommendation that other claims in the Amended Complaint should be dismissed. Accordingly, these portions of Judge Maas's R & R will be reviewed for clear error. See Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241(RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F.Supp.2d 208, 212 (S.D.N.Y.2003)) (" 'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.' ").

In her objections, Herard contends that Judge Maas erred in concluding that (1) Rosado has stated a claim under the ADA and Rehabilitation Act; (2) Rosado has adequately pled a First Amendment retaliation claim; and (3) Rosado's state law claims should not be dismissed. (Def. Objections (Dkt. No. 44) at 4–12) Because Defendant has made specific arguments addressing Judge Maas's findings, the portions of the R & R relevant to these issues will be reviewed de novo.

### B. *Motion to Dismiss Standard*

Defendant has moved to dismiss the Amended Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint," *Kassner,* 496 F.3d at 237 (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 87 (2d Cir.2002)), and must "draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Fernandez v. Chertoff,* 471 F.3d 45, 51 (2d Cir.2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007) (citing *Twombly,* 550 U.S. at 555).

Because Rosado is proceeding *pro se,* this Court is required to read his complaint liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Accordingly, this Court will construe Rosado's pleadings " 'to raise the strongest arguments that they suggest.' " *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir.2009) (quoting *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001)). "Moreover, [factual] allegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." *Braxton v. Nichols,* No. 08 Civ. 08568(PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010). However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.' " *Whitfield v. O'Connell,* No. 09 Civ.1925(WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763,771 (2d Cir.1994)).

## II. *PLAINTIFF'S PRIVACY ACT & HIPAA CLAIMS WILL BE DISMISSED*

 *\*4* This Court finds no error in Judge Maas's recommendation that Rosado's Privacy Act and HIPAA claims be dismissed.

"[U]nder the Privacy Act, a plaintiff may file a suit against an agency, and not an individual ... [I]ndividual officers are not proper parties to a Privacy Act action." *Mandel v. U.S. Office of Pers. Mgmt.,* 244 F.Supp.2d 146, 153 (S.D.N.Y.2003); *see also Young v. Tryon,* No. 12–CV–6251–CJS–MWP, 2013 WL 2471543, at *5 (W.D.N.Y. June 7, 2013) ("[T]he Privacy Act does not provide for a cause of action against individuals."); *Williams v. McCausland,* 791 F.Supp. 992, 1000 (S.D.N.Y.1992) ("The Privacy Act authorizes suits only against 'agencies' and not individuals."). Accordingly, Rosado's Privacy Act claim against Herard must be dismissed.

"HIPAA does not provide for either an express or implied private right of action." *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.,* 639 F.Supp.2d 371, 377 (S.D.N.Y.2009); *see also Mascetti v. Zozulin,* No. 3:09–CV–963 (PCD), 2010 WL 1644572, at *4 (D.Conn. Apr. 20, 2010) ("Enforcement of [HIPAA] and its regulations is limited to the Secretary of Health and Human Services; thus, there is no private right of action."); *Barnes v. Glennon,* No. 9:05–CV–0153 (LEK)(RFT), 2006 WL 2811821, at *6 (N.D .N.Y. Sept. 28, 2006) ("[T]here is no private cause of action stemming from HIPAA.") Accordingly, Rosado has no claim against Herard under HIPAA.

The Court adopts Judge Maas's recommendation that Rosado's Privacy Act and HIPAA claims be dismissed.

## III. *PLAINTIFF'S ADA AND REHABILITATION ACT CLAIMS WILL BE DISMISSED*

Judge Maas concluded that Rosado has no claim against Herard in her individual capacity under either the ADA or the Rehabilitation Act, and that Rosado may not seek monetary damages against Herard in her official capacity under these statutes.[2] *Rosado,* 2013 WL 6170631, at *4. Accordingly, the R & R recommends that Rosado's claims under these statutes be dismissed, except to the extent that they seek injunctive relief against Herard in her official capacity. *See id.*

This Court concludes, however, that Rosado's ADA and Rehabilitation Act claims must be dismissed in their entirety. "In order to state a claim under the ADA, a prisoner must establish that: '(1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability;

and (3) the entity [that] provides the service, program, or activity is a public entity.' " *Allah v. Goord,* 405 F.Supp.2d 265, 274 (S.D.N.Y.2005) (quoting *Hallett v. New York State Dep't of Corr. Servs.,* 109 F.Supp.2d 190, 198 (S.D.N.Y.2000)). "The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act." *Clarkson v. Coughlin,* 898 F.Supp. 1019, 1037 (S.D.N.Y.1995).

**\*5** To state a claim for relief under section 504 of the Rehabilitation Act, an inmate must show that:

(1) he is a "qualified individual with a disability";

(2) he is "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered;

(3) he is being excluded from participation or enjoyment solely by reason of his disability; and

(4) the entity denying the inmate participation or enjoyment receives federal financial assistance.

*Allah,* 405 F.Supp.2d at 274–75 (quoting 29 U.S.C. § 794).

The Second Circuit has noted that "the ADA and Rehabilitation Act are addressed to 'rules ... that hurt [people with disabilities] *by reason of their handicap.' " Henrietta D. v. Bloomberg,* 331 F.3d 261, 276 (2d Cir.2003) (emphasis and alteration in original). "In other words, there must be something different about the way the plaintiff is treated 'by reason of ... [his or her] disability.' " *Id.* (quoting 42 U.S.C. § 12132). Accordingly, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.,* 751 F.Supp.2d 590, 595 (S.D.N.Y.2010) (collecting cases).

In concluding that Rosado has stated an ADA claim, the R & R points to Rosado's assertion that he asked Defendant " 'why he [was] being denied access' to 'therapeutic group session[s] that detainees are entitled to under the directive ( [reasonable] accommodation for people with mental/ [physical] disabilities.' " *Rosado,* 2013 WL 6170631, at \*4 (quoting Am. Cmplt. (Dkt. No. 25) ¶ 8). In the Amended Complaint and in his opposition papers, Rosado states that Herard

*discriminated against Spanish speaking mental health detainees* by refusing them the right to participate in their therapeutic group session[s]. The Plaintiff argues that he was discriminate[d] against because he has been stigmatize[d] by his race & disability. The log-book will show that ... Plaintiff ... & his two neig[h]bors ... name[d] Richard Logo & Christian Jimenez never came out for group session[s] but on the [other] hand nothing but African–Americans [attended therapeutic group sessions].

(Pltf.Br.(Dkt. No. 36) at 6) (emphasis added); *see also* Am. Cmplt. ¶ 11 (alleging that Herard was "discriminating against Spanish speaking mental health detainees by den[y]ing them the right to participate in their therapeutic treatment"))

While Rosado alleges that he was discriminated against when he was denied therapeutic group services, he asserts that the basis of this discrimination was his ethnicity, not a disability. His conclusory statement that he was "stigmatized" for his "disability" offers no factual basis to conclude that he was treated differently than prisoners without mental health conditions (or who were not H.I.V.-positive). *See Iqbal,* 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim) (internal quotations omitted). He does not allege, for example, that prisoners who did not suffer from mental health conditions, or who were not H.I.V.-positive, were allowed to participate in therapeutic group sessions, while he was not. *See Harnett v. Fielding Graduate Inst.,* 400 F.Supp.2d 570, 576 (S.D.N.Y.2005) (quoting *Felix v. N.Y.C. Transit Auth.,* 324 F.3d 102, 107 (2d Cir.2003)) ("[These] statutes ... 'mandate[ ] reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled.' ").

**\*6** The facts alleged by Rosado indicate that the therapeutic group sessions were intended for mental health detainees. Defendant, of course, is a mental health clinician who is "responsible for the welfare of ... mental health detainees." (Am.Cmplt.(Dkt. No. 25) ¶ 5) When Defendant confronted Rosado regarding the grievance he had filed against her, Rosado asked, "Why is it that only African American[ ] inmates are allow[ed] to attend [ ] group sessions and not Spanish speaking inmates? ... [A]ll mental health inmates should be permitted to participate in this program." (*See id.* ¶ 12) The fact that certain detainees with mental illness were allowed to participate in group therapy, while other detainees with mental illness were not, does not demonstrate that

Rosado was discriminated against "because of" his mental illness or some other medical condition.

Rosado has not pleaded facts demonstrating that he was denied access to therapeutic group sessions because of a disability. Instead, he has pleaded facts demonstrating that he was denied access to therapeutic group sessions because of his ethnicity. Because neither the ADA nor the Rehabilitation Act addresses discrimination based on ethnicity, Rosado's claims under these statutes must be dismissed.

## IV. *PLAINTIFF'S § 1983 CLAIMS WILL BE DISMISSED IN PART*

The R & R concludes that Rosado's pleadings can be read to raise Section 1983 claims based on: (1) the right to privacy; (2) due process; (3) deliberate indifference under the Fourteenth Amendment; (4) equal protection; and (5) First Amendment retaliation. The R & R recommends that all of these claims be dismissed except for Rosado's First Amendment retaliation claim. For the reasons set forth below, Judge Maas's recommendations will be adopted except as to Rosado's equal protection claim.

### A. *Right to Privacy*

To the extent that Rosado asserts that Defendant violated his right to privacy by revealing his H.I.V. status to other detainees, Judge Maas concluded that Rosado had waived any such claim by disclosing that his H.I.V. status in a public court filing in Florida in 2011. [3] *Rosado,* 2013 WL 6170631, at *5. This Court finds no error in this determination. "Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest [in his HIV status] in matters of public record." *Doe v. City of New York,* 15 F.3d 264, 268 (2d Cir.1994); *see McKinnon v. Fred,* No. 306 CV 147(JGM), 2007 U.S. Dist. LEXIS 59900, at *14 (D.Conn. Aug. 16, 2007) ("An inmate may waive his privacy right in his medical history through a variety of acts including ... commencement of a lawsuit.... Prior to this incident, plaintiff mentioned his HIV status in documents he submitted in two of his other lawsuits.... Thus, he has waived his privacy right and his HIV status is a matter of public record."). Accordingly, Rosado's right to privacy claim will be dismissed.

### B. *Due Process*

**\*7** This Court also finds no error in the R & R's conclusion that Rosado's "stigma plus" claim should be dismissed, because there is no allegation that Defendant made a false

statement about Rosado in disclosing his H.I.V. status. *Rosado,* 2013 WL 6170631, at *6. "Loss of one's reputation can ... invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest.... This type of claim is commonly referred to as a 'stigma-plus' claim." *Patterson v. City of Utica,* 370 F.3d 322, 330 (2d Cir.2004). "[A] 'stigma plus claim' [ ] requires a plaintiff to allege ... the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he ... claims is false....' " *Velez v. Levy,* 401 F.3d 75, 87 (2d Cir.2005) (quoting *Doe v. Dep't of Pub. Safety,* 271 F.3d 38, 47 (2d Cir.2001), *rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1 (2003)). Rosado acknowledges that he is H.I.V.-positive, and therefore Defendant's statement was not false. (Am.Cmplt. (Dkt. No. 25) ¶¶ 13–16) Accordingly, Rosado's due process claim will be dismissed.

### C. *Deliberate Indifference to Medical Needs*

Judge Maas correctly concluded that Rosado has not plausibly alleged a deliberate indifference claim. *Rosado,* 2013 WL 6170631, at *7. For purposes of such a claim, "a prison official violates the Eighth Amendment [or Fourteenth Amendment] only when two requirements are met." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious,' ... [such that] a prison official's act or omission ... result[s] in the denial of 'the minimal civilized measure of life's necessities.' " *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). "This contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Joyner v. Greiner,* 195 F.Supp.2d 500, 503 (S.D .N.Y.2002). "The second requirement ... [is that] a prison official ... have a 'sufficiently culpable state of mind.' ... In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer,* 511 U.S. at 834 (quoting *Wilson,* 501 U.S. at 297).

Rosado acknowledges that he has been receiving regular treatment for his mental health conditions and H.I.V. infection while incarcerated. (Pltf.Affirm. (Dkt. No. 36) at 18–27 [4] ) He does not allege that he has suffered any specific harm from being denied access to therapeutic group sessions; instead, he speculates that the denial of this service "could [cause] him harm in the present or future." (*Id.* at 9) Such allegations do not demonstrate "a condition of urgency ... that may produce death, degeneration, or extreme pain." *See*

*Joyner,* 195 F.Supp.2d at 503; *see also Beckford v. Portuondo,* 151 F.Supp.2d 204, 218 (N.D.N.Y.2001) ("[E]ven accepting that Plaintiff's mental health care was far from optimum, he was provided significant psychotropic medication [and other treatment] while [incarcerated]. At most, Plaintiff disagrees with the treatment offered and alleges that he should have received ... additional group therapy treatment.... Nowhere does Plaintiff allege that the failure to provide him these additional treatments resulted in an urgent threat to his life or limb or was otherwise so grossly inadequate to rise to the level of deliberate indifference.").

**\*8** Because Rosado's factual allegations are not sufficient to plead a deliberate indifference claim, that claim will be dismissed.

### D. *Equal Protection*

Rosado's equal protection claim is based on Herard's alleged denial of group therapy sessions to him and other Spanish-speaking detainees, while providing these sessions to African American detainees. (Am.Cmplt.(Dkt. No. 25) ¶¶ 7–12) Judge Maas properly found that "Rosado's averments more than suffice to allege the differential treatment of a suspect class." *Rosado,* 2013 WL 6170631, at \*6. "Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis."[5] *Soberal–Perez v. Heckler,* 717 F.2d 36, 41 (2d Cir.1983).

The R & R recommends that Rosado's equal protection claim be dismissed, however, because of a failure to plead facts demonstrating discriminatory intent. *Rosado,* 2013 WL 6170631, at \*6. Judge Maas concluded that "Rosado has alleged no facts from which the Court can infer such intent. At most, Rosado claims that he complained to Herard about the situation and received no response ." *Id.*

Rosado has alleged, however, that "only African American inmates [were] allow [ed] to attend [ ] group session[s] an[d] not Spanish speaking inmates." (Am.Cmplt.(Dkt. No. 25) ¶ 12) Given that there is no obvious medical or administrative reason for such a practice, discriminatory intent—at least at the pleading stage—can be inferred. *See, e.g., Barnes v. Ross,* 926 F.Supp.2d 499, 506–07 (S.D.N.Y.2013) ("Barnes alleges that minority inmates at Sullivan received mental-health care that differed from the care provided to white inmates. Specifically, he alleges that '[prison healthcare providers], would only send ... (white) inmates to Marcy Hospital, where they[ would] get the proper treatment. Africans & Hispanic[s]

(Black[s] & Latin[os] ) would sit in [the institution's on-site mental health unit] for long period[s], then [were] sent[ ] back to their cells, where they[ would] harm themselves or [try] to commit suicide.' ... Barnes' allegations state an equal protection claim."); *see also Phillips v. Girdich,* 408 F.3d 124, 129–30 (2d Cir.2005) ("[*Pro se* inmate's] allegations suffice to state an Equal Protection Violation ... [where plaintiff] alleges that he and other minorities were subject to disparate treatment because of their race."); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991) ("LaBounty ... allege[d] that similarly-situated white inmates were given work assignments without having to complete any 90–day [training] program, while LaBounty, who is black, had the additional obstacles placed in his way. LaBounty further alleged that 'all persons assigned as institution electricians are non-Black and there are witnesses who can testify that it has been that way for the past ten (10) years that they know of.' Thus, his complaint not only alleges that he was treated differently because of his race, but also, drawing a fair inference, that black inmates in the past have been treated differently because of their race. We think these allegations by a *pro se* prisoner sufficiently set forth an equal protection claim."); *Peel v. Crew,* No. 96 Civ. 7154(RWS), 1996 WL 719378, at \*14 (S.D.N.Y. Dec. 13, 1996) ("To state a claim under the Equal Protection clause, and survive a motion to dismiss, plaintiff need only allege discriminatory intent generally and facts from which such intent may be inferred.").

**\*9** Accordingly, this Court will not adopt the Magistrate Judge's recommendation that Rosado's equal protection claim be dismissed. With respect to this claim, Defendant's motion will be denied.

### E. *First Amendment Retaliation Claim*

Herard objects to Judge Maas's conclusion that Rosado has properly pled a First Amendment retaliation claim, arguing that this finding is "wholly at odds" with Judge Maas's finding "that Plaintiff had no right to privacy in his HIV status because he had already disclosed it." (Def. Objections (Dkt. No. 44) at 9–10) Herard argues that because Rosado's H.I.V. status is a matter of public record, her disclosure of that information to other detainees cannot be considered an "adverse action." (*Id.* at 9–12)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the

adverse action.' " *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)). "These allegations may not be conclusory; they must have some basis in specific facts that are not inherently implausible on their face." *Jones v. Harris,* 665 F.Supp.2d 384, 397 (S.D.N.Y.2009). Furthermore, "[c]ourts have been cautioned to approach First Amendment retaliation claims by prisoners with skepticism and particular care." *Id.* (citing *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003)).

Here, Rosado claims that he filed a grievance against Defendant alleging that she had denied him and other Spanish-speaking detainees access to therapeutic group sessions. (Am.Cmplt.(Dkt. No. 25) ¶¶ 10–11) "[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Rosado has adequately alleged that he engaged in protected speech.

To satisfy the second prong, Rosado must allege facts demonstrating that Herard "took adverse action" against him. An "adverse action" is conduct "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes,* 239 F.3d at 493, *overruled on other grounds, Swierkiewicz,* 534 U.S. 506; *see also Davis,* 320 F.3d at 353 ("[R]etaliation against an inmate must be likely to 'chill a person of ordinary firmness from continuing to engage' in a protected activity.") (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 397 (6th Cir.1999)). "In making this determination, the court's inquiry must be 'tailored to the different circumstances in which retaliation claims arise,' bearing in mind that '[p]risoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis,* 320 F.3d at 354 (quoting *Dawes,* 239 F.3d at 493 (quoting *Thaddeus–X,* 175 F.3d at 398)) (alterations in original).

**\*10** Whether Defendant's disclosure of Rosado's H.I.V. status would deter a "similarly situated individual of ordinary firmness" from exercising his right to file a grievance cannot be resolved as a matter of law at this stage of the proceedings. The record does not, for example, disclose (1) the extent to which Rosado's illness was known to other detainees prior to Defendant's disclosures; (2) the extent to which Defendant's disclosures could have been expected to spread

through the Mental Health Unit and the larger institution, or (3) how detainees with H.I.V. are treated by other prisoners. Rosado has pled that "as a result of [Herard's disclosures] ... [his] medical condition ... became known throughout the prison ... [and] he became a target of gossip [and][r]umor as well as [harassment] by prisoners." (Am.Cmplt. (Dkt. No. 25) ¶¶ 16–17) It is a reasonable inference from the pleadings both that Rosado's H.I.V. status was not widely known to other detainees prior to Herard's disclosures, and that the disclosures led Rosado to suffer harm that might deter a similarly situated individual from filing a grievance. "Therefore, 'at this early state, the[se] allegation[s] ... must be construed as describing an adverse action,' and ... [Plaintiff] 'should have the opportunity to develop facts that would demonstrate that [Herard's actions] would deter a reasonable inmate from pursuing grievances.' " *Davis,* 320 F.3d at 354 (quoting *Morales v. Mackalm,* 278 F.3d 126, 131–32 (2d Cir.2002)).

With respect to causation, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009) (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001); *Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir.2001)). Here, Rosado alleges that—after Herard learned that he had filed a grievance against her—Defendant "immediately" approached Rosado in his cell and loudly disclosed that Rosado was "on the verge of dying because he[']s H.I.V.-positive." (Am.Cmplt.(Dkt. No. 25) ¶¶ 12–13) Rosado further alleges that, over the next few days, Herard disclosed Rosado's H.I.V. status to several other detainees. (*Id.* ¶ 14) Assuming these allegations are true, Rosado has sufficiently alleged a causal relationship between his filing of a grievance against Herard and her adverse actions against him. Accordingly, Defendant's motion to dismiss will be denied as to Rosado's retaliation claim. [6]

### F. *"State–Created Danger" Claim*

In his objections to the R & R, Rosado refers to a "state-created danger" claim, alleging that Defendant "consciously, intentionally, and recklessly created a 'danger[ous] situation' " when she disclosed his H.I.V. status to other detainees. (Pltf. Objections (Dkt. No. 48) ¶ 11) Defendant objects to the assertion of this "entirely new theory of liability." (Def. Reply to Pltf. Objections (Dkt. No. 50) at 3)

**\*11** It is well-settled that a "complaint cannot be amended merely by raising new facts and theories in plaintiff['s] opposition papers, and hence such new allegations and claims should not be considered in resolving the motion." *Southwick Clothing LLC v. GFT (USA) Corp.,* No. 99 CV 10452(GBD), 2004 WL 2914093, at \*6 (S.D.N.Y. Dec. 15, 2004). However, "[a] document filed *pro se* is 'to be liberally construed.' " *Erickson,* 551 U.S. at 94 (quoting *Estelle,* 429 U.S. at 106). "Because [plaintiff] is proceeding *pro se,* the Court must read his pleadings 'liberally' and interpret them 'to raise the strongest arguments' that they may suggest." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010).

In the Amended Complaint, Rosado alleges that he "became a target of gossip [and][r]umor as well as [harassment] by prisoners which might lead to inmate on inmate violence." (Am.Cmplt.(Dkt. No. 25) ¶ 17) He also alleges that "employee[s] that work in the correctional department" do not "ensure the safety of ... inmates." (*Id.* ¶ 23) Read liberally, the Amended Complaint may be construed as asserting a Fourteenth Amendment claim under the "state-created danger" doctrine. Accordingly, this Court will interpret Rosado's objections as asserting that Judge Maas erred in not considering this theory of liability.

In *Deshaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 196 (1989), the Supreme Court held that the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* Accordingly, "[a]s a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

An exception to this principle—known as the "state—created danger" exception—provides for state liability for acts of private violence where state actors "in some way ... assisted in creating or increasing the danger to the victim." *Dwares v. City of New York,* 985 F.2d 94, 98–99 (2d Cir.1993), *overruled on other grounds, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993). "[T]he Second Circuit has held that a claim is stated [under the state-created danger exception] where the defendant's facilitation of a private attack amounts to affirmative conduct necessary to state a due process violation." *Campbell v. Brentwood Union Free Sch. Dist.,* 904 F.Supp.2d 275, 280 (E.D.N.Y.2012) (citing *Pena v. DePrisco,* 432 F.3d 98, 109 (2d Cir.2005)).

Here, Rosado has not alleged that he suffered any act of violence. Instead, Rosado claims that Defendant's disclosures *"might* lead to inmate on inmate violence." (Am.Cmplt. (Dkt. No. 25) ¶ 17 (emphasis added)) Absent allegations that Rosado actually was the victim of a violent act, however, he has no claim under the "state-created danger" exception. *Cf. Lombardi v. Whitman,* 485 F.3d 73, 80 (2d Cir.2007) ("[I]n each of those cases [where the state created danger exception was applied], a third party's criminal behavior harmed the plaintiff after a government actor ... enhanced or created the opportunity for the criminal act.").

**\*12** Accordingly, to the extent that Rosado's due process claim is based on a theory of state-created danger, that claim will be dismissed.

### G. *Limitation of Damages under the Prison Litigation Reform Act*

Defendant argues that—to the extent that any of Rosado's claims survive her motion to dismiss—Rosado is barred from recovering compensatory damages under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), because he has not alleged a physical injury. [7] (Def.Br.(Dkt. No. 32) at 15–16)

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Thompson v. Carter,* 284 F.3d 411, 417 (2d Cir.2002) (noting that an inmate may not "recover damages for mental or emotional injury ... in the absence of a showing of actual physical injury"); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (explaining that under the PLRA, in "suits seeking damages for mental or emotional injuries," plaintiff must "make a prior showing of physical injury"); *Lee v. DelFavero,* No. 9:04 CV 382, 2005 WL 2387820, at \*6 (N.D.N.Y. Sept. 28, 2005) (granting defendant's motion to dismiss plaintiff's claim for compensatory damages for "mental anguish and emotional distress" for failure to plead physical injury); *Brewster v. Nassau Cnty.,* 349 F.Supp.2d 540, 553 (E.D.N.Y.2004) (granting defendant's motion to dismiss for plaintiffs failure to allege any physical harm).

" 'If, however, the plaintiff alleges the violation of a constitutional right, the action is not entirely barred and

the plaintiff may obtain injunctive or declaratory relief, and nominal or punitive, but not compensatory damages irrespective of any physical injury if [he] proves that violation.' " *Voorhees v. Goord,* No. 05 Civ. 1407(KMW) (HB), 2006 WL 1888638, at *9 (S.D.N.Y. Feb. 24, 2006) (quoting *Lipton v. Cnty. of Orange,* 315 F.Supp.2d 434, 457 (S.D.N.Y.2004) (citing *Thompson,* 284 F.3d at 418)).

In the Amended Complaint, Rosado alleges that—as a result of Defendant's conduct—he suffers "psychological episodes of mental anguish, such as depression, insomnia, scornful [harassment], headaches, inability to [concentrate], fatigue, [and] loss of appetite"; "became annoyed [continually]"; "suffers from [anxiety] & panic attacks"; and is "a target of gossip [and r]umor[,] as well as harassment by prisoners which might lead to inmate on inmate violence." (Am.Cmplt. (Dkt. No. 25) ¶ 17) Rosado has not alleged any physical injury. (*See id.*) In his prayer for relief, Rosado states that he seeks a declaration that his rights were violated; an injunction requiring Herard to, *inter alia,* permit all inmates to participate in therapeutic group sessions; $5,000 in compensatory damages; and $55 million in punitive damages. (*Id.* ¶¶ 28–31).

**\*13** To the extent that Rosado seeks compensatory damages for mental or emotional harm, that claim will be dismissed, given Rosado's failure to allege physical injury. As Judge Maas noted, however, compensatory damages for intangible deprivations of Rosado's liberty and personal rights—as "distinct from pain and suffering, mental anguish, and mental trauma"—are not barred by the PLRA. *Rosado,* 2013 WL 6170631, at *10. The Second Circuit has held that "[t]he damages recoverable for loss of liberty ... are separable from damages recoverable for such injuries as physical, harm, embarrassment, or emotional suffering." *Kerman v. City of N .Y.,* 374 F.3d 93, 125 (2d Cir.2004). Applying *Kerman,* courts in this Circuit have concluded that a physical injury is not required for a prisoner to recover compensatory damages for the loss of a constitutional liberty interest. *See Mendez v. Amato,* No. 9:12–CV–560 (TJM/CFH), 2013 WL 5236564, at *20 (N.D.N.Y. Sept. 17, 2013) (citing *Kerman,* 374 F.3d at 125–26) ("The Second Circuit has determined that intangibles can serve as a basis for recovery.... The claims surviving defendants' motion involve the loss of such intangibles as liberty through a lack of due process and equal protection. Such claims represent those which fall outside of the physical harm requirement of the PLRA."); *Malik v. City of New York,* No. 11 Civ. 6062(PAC)(FM), 2012 WL 3345317, at *16 (S.D.N.Y. Aug. 15, 2012), *report and recommendation*

*adopted,* No. 11 Civ. 6062(PAC)(FM), 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012) ("[T]he PLRA's physical injury requirement does not bar an award of compensatory damages for First Amendment violations."). Accordingly, Rosado's claim for compensatory damages flowing from the loss of his liberty interests under the First Amendment and the Equal Protection Clause will proceed.

As the R & R correctly recognizes, the PLRA does not place "limitations on injunctive or declaratory relief [or] nominal and punitive damages." *Rosado,* 2013 WL 6170631, at *10; *see Thompson,* 284 F.3d at 418. Rosado is therefore entitled to pursue these remedies with respect to his remaining claims. [8]

## V. *STATE CLAIMS*

As to Rosado's state law claims, Herard's only argument for dismissal is that this Court should decline to exercise its supplemental jurisdiction. (Def. Reply Br. (Dkt. No. 38) at 6) However, since certain of Rosado's federal claims will survive the motion to dismiss, and given that these claims arise out of the same events and conduct as his state law claims, the state law claims will not be dismissed. *See Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 121–22 (2d Cir.2006) (quoting 28 U.S.C. § 1367(a)) ("Federal district courts have supplemental jurisdiction over state-law claims 'that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.' ").

## VI. *DEFENDANT'S QUALIFIED IMMUNITY ARGUMENT*

**\*14** In responding to Rosado's objections to the R & R, Defendant raises the defense of qualified immunity for the first time. (Def. Reply to Pltf. Objections (Dkt. No. 50) at 9–11) Because this argument was never raised in the motion papers, it will not be considered now. *See Smith v. Hulihan,* No. 11 CV 2948(HB), 2012 WL 4928904, at *1 (S.D.N.Y. Oct. 17, 2012) ("[N]ew arguments ... cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all.").

## *CONCLUSION*

For the reasons stated above, Defendant's motion to dismiss is denied with respect to Plaintiff's equal protection and First Amendment retaliation claims, except to the extent that

compensatory damages for mental and emotional injury are sought in connection with these claims. The motion to dismiss is granted with respect to these claims to the extent that they seek compensatory damages for mental and emotional injury. The motion is also granted with respect to Plaintiff's remaining federal claims. The motion to dismiss is otherwise denied.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 30) and to mail a copy of this Order to Tyrone Rosado, 241–11–05751, Anna M. Kross Center (A.M.K.C.) C–95, 18–18 Hazen Street, East Elmhurst, New York 11370.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1303513

## Footnotes

1    The Court's factual statement is drawn from Plaintiff's Complaint and Amended Complaint. Plaintiff's factual allegations are presumed to be true for purposes of resolving a motion to dismiss. *See Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir.2007).

2    Rosado has no claim against Herard in her individual capacity under these statutes. "[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001); *Keitt v. New York City,* 882 F.Supp.2d 412, 426 (S.D.N.Y.2011) ("Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act.") (citing *Harris v. Mills,* 572 F.3d 66, 72–73 (2d Cir.2009)).

Less clear is whether claims for monetary damages are available against Herard in her official capacity. The Second Circuit has held that "a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Garcia,* 280 F.3d at 112. Some courts in this District have extended this holding to individuals sued in their official capacities. *See Degrafinreid v. Ricks,* 417 F.Supp.2d 403, 411 (S.D.N.Y.2006), *on reconsideration on other grounds,* 452 F.Supp.2d 328 (S.D.N.Y.2006) ("Since the ADA permits official capacity suits, [plaintiff] can pierce Defendant's claim of state sovereign immunity and recover money damages under Title II, provided he satisfies the standard set forth in [*United States v. Georgia,* 546 U.S. 151 (2006).]"); *see also Johnson v. Goord,* No. 01 Civ. 9587 PKC, 2004 WL 2199500, at *19 (S.D.N.Y. Sept. 29, 2004) ("[P]laintiffs' claims against the individual defendants in their official capacities under section 504 of the Rehabilitation Act and Title II of the ADA fail because those laws do not provide for money damages against the state or state officials in their official capacities, absent a showing that any violation was motivated by discriminatory animus or ill will due to the disability.").

Other courts have concluded that monetary damages are available against individuals in their official capacities under the ADA, but not under the Rehabilitation Act. *See Gowins v. Greiner,* No. 01 Civ. 6933(GEL), 2002 WL 1770772, at *5 (S.D.N.Y. July 31, 2002) ("[Plaintiff] may not sue DOCS under ... the Rehabilitation Act at all, and may sue DOCS under the ADA only to the extent that the alleged violation resulted from discriminatory animus based on his disability.").

This Court need not resolve the official capacity issue here. Even reading Plaintiff's pleadings liberally, he has not asserted that he was denied access to therapeutic group sessions because of a disability.

3    "In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court ... may ... consider matters of which judicial notice may be taken under Fed.R.Evid. 201.... [C]ourts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted in the other

litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773–74 (2d Cir.1991).

4    The pages numbers referenced in this opinion are the numbers assigned when the document was electronically filed.

5    Judge Maas correctly rejected Defendant's argument that Plaintiff alleges discrimination based on language rather than ethnicity. *See Rosado,* 2013 WL 6170631, at *6. Although Plaintiff refers to himself and certain other detainees as "Spanish speakers," he repeatedly contrasts this group with "African Americans." (*See, e.g.,* Am. Cmplt. (Dkt. No. 25) ¶ 12) Accordingly, the classification Plaintiff alleges is one based on ethnicity, and not language. This case is thus distinguishable from *Soberal–Perez v. Heckler,* 717 F.2d 36, 41 (2d Cir.1983)—cited by Defendant—because in that case "[a] classification [was] ... made ... on the basis of language, *i.e.,* English-speaking versus non-English-speaking individuals, and not on the basis of race, religion or national origin."

6    Defendant argues that this ruling is inconsistent with the dismissal of Plaintiff's privacy claim. This argument ignores the fact that Plaintiff's privacy and First Amendment retaliation claims involve different rights. The retaliation claim implicates Plaintiff's freedom to engage in constitutionally protected activity—here, First Amendment speech—while Plaintiff's privacy claim is based on his "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599 (1977). While Plaintiff waived his privacy claim by filing court papers disclosing his H.I.V. status, it does not follow that he waived his right to be free of retaliation for engaging in First Amendment speech. The relevant question for purposes of Plaintiff's retaliation claim is whether disclosure of Plaintiff's H.I.V. status to other detainees—individuals who were housed in the same facility as Plaintiff and who did not know of his medical condition—"would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes,* 239 F.3d at 493. It is reasonable to infer that a similarly situated detainee might be deterred from filing a grievance if threatened with disclosure of his H.I.V. status to other detainees. The fact that detainees in the Mental Health Unit could have learned about Plaintiff's H.I.V. status from documents filed in Plaintiff's Florida court action does not change the analysis.

7    Defendant did not raise this argument in her objections to the R & R. Accordingly, to the extent that this argument concerns Plaintiff's retaliation claim, this Court will review the Magistrate Judge's determination for clear error. As to Plaintiff's equal protection claim, Judge Maas determined that that claim should be dismissed and did not reach the issue of damages. Accordingly, as to Plaintiff's equal protection claim, this Court will consider Defendant's PLRA argument *de novo.*

8    Herard argues that Rosado's claims for injunctive and declaratory relief are moot because Rosado has been transferred from the Mental Health Unit at the George R. Vierno Detention Center, where the alleged events occurred. (Def. Objections (Dkt. No. 44) at 9) "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006).

The rationale for this rule is that—with the prisoner's transfer—"the problem sought to be remedied has ceased, and ... there is 'no reasonable expectation that the wrong will be repeated.' " *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975)). However, both the George R. Vierno Detention Center and the Anna M. Kross Center—where Rosado is currently housed— are Rikers Island facilities. It is not clear from the record whether Rosado continues to be under Herard's care, or will be under Herard's care again in the future, given that he is detained in a Rikers Island facility. Accordingly, Plaintiff's claims for injunctive and declaratory relief will not be dismissed as moot at this time.

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3827742
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Benedict R. GENCO, Plaintiff,

v.

SARGENT & COLLINS LLP, Defendant.

18-CV-0107-LJV-MJR
|
Signed 06/01/2018
|
Filed 06/04/2018

**Attorneys and Law Firms**

Benedict R. Genco, N. Tonwanda, NY, pro se.

Richard G. Collins, Sargent & Collins, LLP, Williamsville, NY, for Defendant.

REPORT AND RECOMMENDATION

HONORABLE MICHAEL J. ROEMER, United States Magistrate Judge

## INTRODUCTION

**\*1** This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for hearing and reporting on dispositive motions for consideration by the District Court. Before the Court is defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 3). For the following reasons, it is recommended that defendant's motion to dismiss be granted and the complaint dismissed with prejudice.

## RELEVANT FACTS AND BACKGROUND

Plaintiff Benedict Genco ("plaintiff" or "Genco"), who is proceeding *pro se*, filed the instant complaint against the law firm of Sargent & Collins, LLP ("Sargent & Collins" or "defendant") on January 22, 2018. (Dkt. No. 1). The allegations in plaintiff's complaint are, in large part, difficult to follow or fully understand. In light of plaintiff's *pro se* status, the Court has attempted to discern

the causes of action asserted. Plaintiff's claims appear to be premised upon Sargent & Collins' legal representation of his employer, Starpoint Central School District ("Starpoint"), in or around January of 2017. (*Id.*). Plaintiff contends that, on account of his various disabilities, Starpoint placed him on administrative leave pursuant to Section 72 of the New York State Civil Service Law and forced him to undergo a fitness for duty medical examination. (*Id.*). He claims that by serving as legal counsel to Starpoint during this time, Sargent & Collins also discriminated and retaliated against him on the basis of his disabilities.[1] (*Id.*). Plaintiff alleges that Sargent & Collins contacted the doctor who performed the examination, that they engaged in the "unauthorized disclosure" of his medical records, and that they "assisted" Starpoint in placing him on unpaid leave. (*Id.*). Plaintiff indicates that the nature of his suit against Sargent & Collins is "disability discrimination, retaliation, providing unauthorized medical records and failure to accommodate." Genco's complaint further alleges that: (1) Starpoint failed to accommodate his disability with respect to boiler training; (2) his fitness for duty examination was improper because the doctor who performed the examination was not a physician;[2] and (3) the fitness for duty examination as well as his placement on administrative leave violated the New York State Civil Service Law and the New York State Education Law. (*Id.*).

**\*2** On February 20, 2018, Sargent & Collins filed the instant motion to dismiss the complaint on the basis that plaintiff fails to assert any viable claims for relief. (Dkt. Nos. 3-5). Plaintiff filed responses in opposition to the motion to dismiss.[3] (Dkt. Nos. 8, 10). The responses allege, for the first time, that Sargent & Collins committed the criminal offense of "offering a false instrument for filing" and that their motion to dismiss his complaint was untimely. Defendant filed a reply in further support of the motion to dismiss on March 29, 2017. (Dkt. No. 9). On April 16, 2018, this Court heard oral argument as to defendant's motion to dismiss.[4]

## DISCUSSION

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)

Case 3:24-cv-00268-MAD-ML   Document 12   Filed 07/03/24   Page 82 of 85

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[ ]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Bell Atl. Corp.*, 550 U.S. at 679.

**\*3** Additionally, the court must be mindful when an individual is proceeding *pro se*. "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."). However, even a *pro se* complaint will be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'." *Ashcroft*, 556 U.S. at 678; *quoting Bell Atl. Corp.*, 550 U.S. at 570.

In reviewing Genco's complaint and response to the motion to dismiss, the Court has accepted as true all factual allegations, drawn all inferences in plaintiff's favor, and held plaintiff's *pro se* pleadings to a less stringent standard than those drafted by an attorney. Moreover, the Court has attempted to interpret Genco's lengthy, disjointed and confusing allegations and arguments in a manner consistent with a claim or claims upon which relief may be granted. However, the Court concludes that plaintiff has not stated a claim for relief that is plausible on its face.

Genco alleges that his placement on administrative leave and the requirement that he undergo a fitness for duty examination amounted to disability discrimination by

Starpoint, his employer. He contends that Sargent & Collins also discriminated and retaliated against him based upon his disabilities by providing legal representation to Starpoint at the time these actions were taken. Indeed, plaintiff cannot maintain a cause of action against Sargent & Collins pursuant to the Americans with Disabilities Act ("ADA"). Title I of the ADA prohibits employers from discriminating against a qualified individual with a disability in regard to any aspect of employment. 42 U.S.C. § 12112(a) ("no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment."). Genco admits in his complaint that he is not a current or former employee of Sargent & Collins. Therefore, he cannot sue defendant for disability discrimination pursuant to Title I of the ADA. [5] *See Curry v. Town of Islip*, 13-CV-3597, 2017 U.S. Dist. LEXIS 203382, \*10 (EDNY Dec. 8, 2017) (*sua sponte* recommendation that plaintiff's ADA claim be dismissed because she was not an employee or a former employee of defendant); *Lauria v. Donahue*, 438 F. Supp. 2d 131, 140 (EDNY 2006) (because plaintiff "was neither an employee, nor former employee of [the company], her claim under the ADA was dismissed."); *Morgenthal v. AT&T*, 97-CIV-6443, 1999 U.S. Dist. LEXIS 4294, at \*4 (S.D.N.Y. 1999) (holding that because the plaintiff was not an employee of the defendant he could not be considered a "qualified individual" under the ADA).

Plaintiff also seems to claim that in providing legal representation to Starpoint and communicating with the doctor who performed the fitness for duty examination, Sargent & Collins "assisted" Starpoint in placing plaintiff on unpaid leave. His complaint further alleges, albeit in a vague and confusing manner, that Starpoint failed to accommodate his disability with respect to a boiler training. However, it is unclear exactly how Sargent & Collins was involved in the alleged failure to accommodate. For the reasons just stated, to the extent that plaintiff is claiming that he suffered adverse employment actions on account of his disabilities during his tenure at Starpoint, his cause of action rests with his employer and not his employer's legal counsel. [6]

**\*4** Further, even if plaintiff were able to bring a claim against Sargent & Collins under the ADA, Genco's conclusory allegations of discrimination fail to explain how benign actions taken by the law firm in course of representing a client, such as writing letters on behalf of their client or facilitating an independent medical examination and communicating the

results, are in any way discriminatory or otherwise connected to plaintiff's disabilities. *See Iqbal*, 556 U.S. at 678 (Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation ... [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations and quotations omitted); *Reyes v. Fairfield Props.*, 661 F. Supp.2d 249, 268-269 (EDNY 2009) (conclusory statements that defendants retaliated and discriminated against plaintiff based upon race "do not establish plausibility on [their] face and are insufficient to satisfy even the liberal pleading standards under *Rule 8(a)* and *Iqbal*.").

Genco's allegations that Sargent & Collins was involved in the "unauthorized disclosure" of his medical information also fail to state a claim under federal law. Even if the Court were to construe these vague allegations as a claim under the Health Insurance Portability and Accountability Act ("HIPAA"), no such cause of action exists here. Sargent & Collins is not a health care provider and HIPAA does not provide private rights of action to individuals. *See Mathie v. Lawrence Womack*, 14-CV-6577, 2015 U.S. Dist. LEXIS 11266 (EDNY Jan. 29, 2015) (there is no private right of action under HIPAA and HIPAA enforcement actions are "in the exclusive purview of the Department of Health and Human Services"); *Hunt v. Conry, Simberg, Gannon, Drevans, Abel, Lurvey, Morrow & Schefer, P.A.*, 13-CV-1493, 2013 U.S. Dist. LEXIS 187052 (NDNY Dec. 11, 2013) (dismissing plaintiff's claim that law firm defendant disclosed medical information about plaintiff during the law suit because "the law firm is certainly not a health care provider, and plaintiff has no private right of action under HIPAA.").

Finally, to the extent plaintiff is attempting to assert causes of action based upon allegations that Sargent & Collins filed an untimely motion to dismiss or offered "a false instrument for filing", his claims lack even an arguable basis in law or fact. Offering a false instrument for filing is a violation of Section 175.35 of the New York State Penal Law, for which there is no private right of action. Furthermore, the record is bereft of evidence that defendant filed any document containing false or fraudulent information. Likewise, no cause of action exists for the untimely filing of a motion to dismiss a complaint nor is the instant motion to dismiss untimely. Genco served the summons and complaint on defendant on January 30, 2018. (Dkt. No. 2). Rule 12 of the Federal Rules of Civil Procedure indicates that a party has twenty-one days to answer or move to dismiss a complaint. *See* Fed. R. Civ. P 12(a). Rule 5 of the Federal Rules of Civil Procedure provides that service

is "complete upon mailing." *See* Fed. R. Civ. P. 5(b)(2)(C). Defendant filed the motion and mailed a copy to plaintiff on February 20, 2018, which is twenty-one days after the motion to dismiss was served.

For these reasons, the Court finds that plaintiff has not alleged a claim for relief that is plausible on its face and recommends that the complaint be dismissed. The Court now turns to whether the complaint should be dismissed with or without prejudice. The Second Circuit has advised that "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal citations omitted). However, leave to replead may be denied where it is apparent that no amendments would cure the deficiencies of the pleading and an attempt to replead would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). *See also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Here, the Court cannot identify any allegations in plaintiff's complaint that, even if properly pled, would constitute a viable claim under the law. The deficiencies are substantive in nature and cannot be remedied by amendment or repleading. Therefore, it is recommended that plaintiff's complaint against Sargent & Collins be dismissed with prejudice.

## CONCLUSION

**\*5** For the foregoing reasons, it is recommended that Sargent & Collins, LLP's motion to dismiss the complaint be granted and the complaint dismissed with prejudice. (Dkt. No. 3).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure,

Case 3:24-cv-00268-MAD-ML    Document 12    Filed 07/03/24    Page 84 of 85

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3827742

## Footnotes

1    Genco has filed a separate suit in this Court against Starpoint alleging employment discrimination, retaliation and failure to accommodate in violation of the Americans with Disabilities Act. (*See Genco v. Starpoint Central School District*, Case No. 1:17-CV-01168). Starpoint moved to dismiss plaintiff's *pro se* complaint. Today, the Court issued a Report recommending that Starpoint's motion to dismiss plaintiff's complaint be denied. (Case No. 1:17-CV-01168, Dkt. No. 26). Plaintiff further filed suit, also on a *pro se* basis, against the law firm of Webster Szanyi LLP. (*See Genco v. Webster Szanyi, LLP*, Case No. 1:18-CV-00093). Webster Szanyi, who is representing Starpoint in the course of plaintiff's employment discrimination lawsuit, moved to dismiss the complaint. Today, this Court issued a Report recommending that the complaint against Webster Szanyi be dismissed with prejudice. (*Id.* at Dkt. No. 18). It is also noted that plaintiff filed a previous employment discrimination lawsuit against Starpoint, in this Court, in March of 2013. In February of 2015, the Honorable William M. Skretny granted summary judgment in favor of Starpoint. *See Genco v. Starpoint Central School District*, 1:13-CV-301, 2015 WL 540217 (WDNY Feb. 10, 2015).

2    The complaint states that Michael P. Santa Maria, Ph.D. performed plaintiff's medical examination. (Dkt. No. 1). Defendant's response papers indicate that Dr. Santa Maria is a board-certified neuropsychologist and that he performed a neuropsychological evaluation and independent medical examination of plaintiff. (Dkt. No. 5).

3    The allegations and arguments in plaintiff's responses, like those in his complaint, lack clarity or coherence. His disjointed narrative sets forth a litany of grievances against Starpoint, Sargent & Collins, and Dr. Santa Maria. He attaches various documents including letters from Sargent & Collins and Starpoint relative to his leave and fitness for duty examination, Dr. Santa Maria's report from his neuropsychological evaluation and independent medical examination, a "transcript" of the medical examination that plaintiff transcribed himself, HIPAA releases provided to Dr. Santa Maria, plaintiff's individualized education plan from when he was enrolled in the Starpoint School District, internet research regarding Dr. Santa Maria's practice and areas of specialty, a decision in a prior federal lawsuit filed by plaintiff against Starpoint, and information regarding the elements of the crime of filing a false instrument. As best the Court can ascertain, plaintiff's chief complaint against defendant is that by providing legal representation to Starpoint when plaintiff was placed on administrative leave, Sargent & Collins discriminated against him.

4     Also at that time, this Court heard oral argument as to the motion to dismiss and a request for a filing injunction on behalf of Starpoint in *Genco v. Starpoint Central School District*, and oral argument as to the motion to dismiss in *Genco v. Webster Szanyi LLP*.

5     Likewise, the facts of this lawsuit have nothing to do with the other four titles of the ADA, which prohibit disability discrimination in: (1) access to public services, programs and activities provided by public entities (Title II); (2) access to public accommodations, such as hotels and theaters, provided by private entities (Title III); and (3) telecommunications (Title IV). *See* 42 U.S.C. §§ 12101-12213.

6     Similarly, plaintiff has failed to establish any viable claim for relief against Sargent & Collins based upon his allegations that the doctor who performed the fitness for duty examination was not a physician and that the examination was not performed in accordance with the New York State Civil Service Law or New York State Education Law. Plaintiff acknowledges in his complaint that Starpoint, his employer, placed him on administrative leave and sent him for a medical examination. No cause of action exists against Sargent & Collins for their role in facilitating the medical examination or communicating Starpoint's position to plaintiff or others. *See Hills v. Praxair, Inc.*, 11-CV-678, 2012 U.S. Dist. LEXIS 74125 (WDNY May 29, 2012) (dismissing plaintiff's complaint against the attorneys who represented his employer in defense of plaintiff's EEOC charge because, *inter alia*, statements made in quasi-judicial proceedings, such as arguments submitted in response in an EEOC charge or while representing a client at a hearing, are protected by absolute privilege).

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.